Nathaniel S.G. Braun, SBN 269087
 *nbraun@sinclairbraun.com*
Patice Alana Gore, SBN 258776
 *pgore@sinclairbraun.com*
SINCLAIR BRAUN KARGHER LLP
15260 Ventura Blvd., Suite 715
Sherman Oaks, California 91403
Telephone: (213) 429-6100
Facsimile: (213) 429-6101

Attorneys for Defendant
BLUE HILL SPECIALTY INSURANCE COMPANY
INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

KAREN KARAKHANIAN, an individual;
HERMINE ARAKELYAN, an individual,

Plaintiffs,

vs.

BLUE HILL SPECIALTY INSURANCE COMPANY Inc,, an Illinois Corporation, AND DOES 1 TO 50, INCLUSIVE,

Defendant.

Case No.: 2:26-cv-06753

**NOTICE OF REMOVAL BY DEFENDANT BLUE HILL SPECIALTY INSURANCE COMPANY, INC. PURSUANT TO 28 USC § 1441 (DIVERSITY) ; EXHIBITS A THROUGH C**

[Removed from the Superior Court of California, Los Angeles County Case No. 26STCV14805]



1

**NOTICE OF REMOVAL**

**TO THE HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** Defendant BLUE HILL SPECIALTY INSURANCE COMPANY, INC. ("Blue Hill") hereby seeks removal of the civil action entitled, *Karen Karakhanian, et al. v. Blue Hill Specialty Insurance Company, Inc.*, et al., Case Number 26STCV14805 ("State Court Action") from the Superior Court of the State of California for the County of Los Angeles to the United States District Court for the Central District of California, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 on the grounds that diversity of citizenship exists due to fraudulent joinder, as detailed below, therefore, the action is removable to this Court. Blue Hill states that the above facts were true at the time that the Complaint was filed and remains true as of the date of the filing of this Notice of Removal:

## I.  BACKGROUND

1.  On May 8, 2026, Plaintiffs Karen Karakhanian and Hermine Arakelyan filed the complaint in the State Court Action. A true and correct copy of the Complaint in the State Court Action is attached hereto as **Exhibit A**.

2.  On May 21, 2026, Blue Hill was served via its agent for service of process with a summons, the Complaint in the State Court Action, and other case initiating documents. The pleadings and documents received by Blue Hill are attached hereto as **Exhibit B**.

3.  Copies of additional pleadings that have been filed in the State Court Action are collectively attached hereto as **Exhibit C**.

4.  The State Court Action case arises from an August 31, 2023 auto collision wherein Plaintiffs claim they were passengers occupying a vehicle by a driver they connected with using Uber Technologies, Inc.'s ("Uber") Ridesharing Request Service. Plaintiffs claim they were injured when the vehicle they occupied was struck by a vehicle driven by an unidentified driver that fled the scene of the accident. (Exhibit A [Complaint], ¶¶9-15, 19.)


SINCLAIR BRAUN KARGHER LLP

5.     Plaintiffs made claims for uninsured motorist bodily injury coverage benefits under California Transportation Network Company Commercial Auto Policy number 01230478 ("Policy") issued by Blue Hill to Uber. (Complaint, ¶¶7-8, 20.)

6.     Plaintiffs allege that Blue Hill denied coverage for Plaintiffs' claims and failed to provide Policy benefits without a reasonable basis. (Complaint, ¶32.) Plaintiffs further allege that Blue Hill's stated basis for denial was improper and unreasonable and, as a result, Plaintiffs were deprived of policy benefits they contends are owed under the Policy. (Complaint, ¶¶35-36.)

7.     Plaintiff asserts claims for breach of contract, breach of the covenant of good faith and fair dealing ("bad faith"), and invasion of declaratory relief.

## II.     JURISDICTION & VENUE

8.     This is a civil action over which this Court has jurisdiction under 28 U.S.C. § 1332, and is one which may be removed to this Court pursuant to the provisions of 28 U.S.C. § 1441(b), in that it is a civil action between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, as shown below.

9.     The United States District Court for the Central District of California embraces Los Angeles County, the county in which this lawsuit is now pending. This Court is therefore a proper venue for this action pursuant to 28 U.S.C. § 1441(a).

## III.     GROUNDS FOR REMOVAL

10.     As alleged in more detail below, there is complete diversity between Blue Hill and Plaintiffs and this matter is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest.

### A.     THERE IS COMPLETE DIVERSITY OF PARTIES

11.     Blue Hill is informed and believes that Plaintiffs Karen Karakhanian and Hermine Arakelyan are, and were at the commencement of the State Court Action and at the time of removal, individuals residing in the State of California. (Complaint, ¶1.) For diversity purposes, a person is a "citizen" of the state in which he or she is

SINCLAIR BRAUN KARGHER LLP

domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). Residence is prima facie evidence of domicile. *See Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986) (allegations of residency in a state court Complaint can create a rebuttable presumption of domicile supporting diversity of citizenship). Plaintiffs are therefore citizens of California for the purposes of determining citizenship.

12. Blue Hill is, and was at the commencement of the State Court Action and at the time of removal, a corporation organized and existing under the laws of the State of Illinois, with its principal place of business in the State of Ohio. (Request for Judicial Notice ("RJN"), filed concurrently herewith, ¶1; Declaration of Patice A. Gore, filed concurrently herewith, ¶2, Exhibit D, thereto, page 5.) Blue Hill is an Illinois corporation that transacts in the business of insurance in California on an approved, non-admitted basis. A corporation "shall be deemed a citizen of any State by which it has been incorporated and of the state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). Thus, Blue Hill is a citizen of the State of Illinois and Ohio for the purposes of determining citizenship.

13. Defendants DOES 1 to 50, inclusive, are fictitiously named and need not be considered for purposes of removal. (28 U.S.C. § 1441(a); *Newcombe v. Adolphe Coors Co.,* 157 F.3d 686, 690 (9th Cir. 1998).)

14. Accordingly, complete diversity of citizenship exists between the parties.

### B.    THE AMOUNT IN CONTROVERSY EXCEEDS $75,000

15. A defendant can establish the amount in controversy by the allegations in a complaint, or by setting forth facts in the notice of removal that demonstrate the amount in controversy exceeds $75,000. *Gaus v. Miles, Inc.*, 980 F.2d 564, 576 (9th Cir. 1992), *accord Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999). A lengthy list of damages claimed in the complaint may establish the amount in controversy exceeds $75,000. *White v. FCI USA, Inc.*, 319 F.3d 672, 675 (5th Cir. 2003). In addition, attorneys' fees and costs of suit may be considered when determining whether the amount in controversy exceeds $75,000 for purposes of establishing

SINCLAIR BRAUN KARGHER LLP

diversity jurisdiction. *Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 238, 240 (1943). And a reasonable inference of a potential punitive damages award may also be considered in determining the amount in controversy. *Ibid*.

16. In the Complaint, Plaintiffs pray for several categories of monetary damages, including all unpaid insurance benefits owed under the policy, including Uninsured Motorist Bodily Injury Coverage benefits, up to the Policy's $1 Million policy limit, general damages, emotional distress damages, special damages, economic losses, expenses, out-of-pocket losses, consequential damages, reasonable costs of suit and attorneys' fees, prejudgment interest, and post-judgment interest as well as declaratory relief. (Complaint, Prayer for Relief, ¶¶1-5, 8; pp. 15-16.) Plaintiffs' extensive list of alleged damages, supported by the information regarding Plaintiff's claims discussed below, demonstrate Plaintiffs' claims each exceed the requisite amount in controversy for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

17. In connection with his insurance claim, Plaintiff Karen Karakhanian submitted past medical bills of approximately $57,760.00. Declaration of Patice A. Gore ("Gore Decl."), filed concurrently herewith, ¶3. Additionally, Karakhanian is claiming that he will incur future medical expenses and submitted a written report from a medical provider recommending left knee arthroscopic surgery and meniscectomy. *Ibid*. The medical provider estimated the approximate cost of recommended surgery to be approximately $55,000. *Ibid*. Karakhanian is also making a claim for emotional distress and losses related to pain and suffering. *Ibid*. Thus, Karakhanian's claim with respect to past and present medical expenses alone totals $112,759.80, which exceeds the requisite amount in controversy for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

18. In connection with her insurance claim, Plaintiff Hermine Arakelyan submitted past medical bills of approximately $84,015.00. Gore Decl., ¶4. Arakelyan is also making a claim for emotional distress, future medical expenses, and losses related

**NOTICE OF REMOVAL**

SINCLAIR
BRAUN
KARGHER LLP

to pain and suffering. *Ibid*. Thus, the amount of Arakelyan's claim exceeds the requisite amount in controversy for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

## IV.    THE PREREQUISITES FOR REMOVAL HAVE BEEN SATISFIED

19.    This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b), because Blue Hill has filed this notice within 30 days after receiving the pleadings from which Blue Hill could first determine that this action was removable and less than one year after commencement of this action as required under 28 U.S.C. § 1446(c). The allegations of this notice are true and correct and within the jurisdiction of the United States District Court for the Central District of California.

20.    Pursuant to 28 U.S.C. § 1446(d), a copy of this notice of removal is being filed with the clerk of the Superior Court of California, County of Los Angeles. Blue Hill is also providing written notice of removal to Plaintiffs, through their counsel of record, pursuant to 28 U.S.C. § 1446(d).

**WHEREFORE**, Blue Hill hereby removes the State Court Action now pending in the Superior Court of the State of California, County of Los Angeles, to this Honorable Court, and requests this Court retain jurisdiction for all further proceedings.

Dated:  June 22, 2026                    SINCLAIR BRAUN KARGHER LLP

By:  _/s/-Nathaniel S.G. Braun_____
     NATHANIEL S.G. BRAUN
     PATICE A. GORE
     Attorneys for Defendant
     BLUE HILL SPECIALTY
     INSURANCE COMPANY INC.

Electronically FILED by
Superior Court of California,
County of Los Angeles
5/08/2026 2:53 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By D. Williams, Deputy Clerk

Smbat Mamyan, Esq. SBN 323417
Serob Alajanyan, Esq. SBN 331708
Alibi Akylas, Esq. SBN 365126
A&M LAW, APC
16530 Ventura Blvd, Ste 627
Encino, CA 91436
Phone: (818) 855-1858
Fax: (855) 630-9997
Email: SamM@AMLawFirm.net; AlibiA@AMLawFirm.net

Attorney for Plaintiffs,
KAREN KARAKHANIAN, HERMINE ARAKELYAN

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

| | |
|---|---|
| KAREN KARAKHANIAN, an individual; HERMINE ARAKELYAN, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> BLUE HILL SPECIALTY INSURANCE COMPANY, Inc., an Illinois Corporation, AND DOES 1 TO 50, INCLUSIVE, <br><br> Defendant. | Case No.: 26STCV14805 <br><br> **COMPLAINT FOR DAMAGES** <br> 1. BREACH OF CONTRACT – THIRD PARTY BENEFICIARY <br> 2. BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING <br> 3. DECLARATORY RELIEF RE RIGHTS AND DUTIES UNDER INSURANCE POLICY <br><br> UNLIMITED CIVIL CASE <br><br> [AMOUNT DEMANDED EXCEEDS $35,000] |

Plaintiffs, KAREN KARAKHANIAN and HERMINE ARAKELYAN (hereinafter "**Plaintiffs**") sue Defendant, BLUE HILL SPECIALTY INSURANCE COMPANY, Inc. (hereinafter "**Defendant**"), and alleges as follows:

///

///

///

///

COMPLAINT FOR DAMAGES

1

**NOTICE OF REMOVAL**

**EXHIBIT A**
**Page 7**

## PARTIES, JURISDICTION AND VENUE

1. Plaintiffs are natural persons and residents of Los Angeles County, California.

2. Plaintiffs are informed and believe, and based thereon allege, that Defendant is, and at all relevant times was, an insurance company organized and existing under the laws of the State of Illinois, and was authorized, approved, permitted, or otherwise qualified to issue, underwrite, administer, service, and/or conduct insurance-related business in the State of California.

3. This Court has subject-matter jurisdiction over this action because this is an unlimited civil action and the amount in controversy exceeds the jurisdictional minimum of this Court.

4. This Court has personal jurisdiction over Defendant because Defendant conducted insurance-related business in California, issued and/or underwrote an insurance policy providing coverage for California transportation-network-company operations, accepted premiums for California risks, and the acts and omissions giving rise to this action occurred in California. California courts may exercise jurisdiction on any basis not inconsistent with the California or United States Constitutions.

5. Venue is proper in this Court pursuant to Code of Civil Procedure section 395.5 because Defendant is a corporation and/or association, the Policy was to be performed in this County, Defendant's obligations and liabilities under the Policy arose in this County, Plaintiffs' claims for benefits arose in this County, and Defendant's breach occurred in this County when Defendant denied coverage and/or failed to pay benefits owed to Plaintiffs. Section 395.5 allows suit against a corporation or association in the county where the contract is made or to be performed, where the obligation or liability arises, or where the breach occurs.

6. Plaintiffs are informed and believe, and based thereon allege, that at all relevant times, each Defendant, including DOES 1 through 50, was the agent, employee, representative, servant, joint venturer, and/or co-conspirator of each of the remaining Defendants, and in doing the acts alleged herein, acted within the course and scope of such relationship and/or with the permission, consent, authorization, or ratification of the remaining Defendants.

///

///

///

**COMPLAINT FOR DAMAGES**

2

## GENERAL ALLEGATIONS

7. At all relevant times, Defendant issued and underwrote a California Transportation Network Company Commercial Auto Policy, Policy No. 01230478, to Uber Technologies, Inc., Rasier, LLC, and related entities, for the policy period March 1, 2023 through March 1, 2024.

8. The Policy provided Uninsured/Underinsured Motorist Bodily Injury Coverage for Rideshare Period 3 in the amount of $1,000,000 per accident while passengers were on board an insured auto during a covered Uber ride.

9. On or about August 31, 2023, Plaintiffs used the Uber ride-share application to request transportation.

10. On or about August 31, 2023, Plaintiffs were passengers occupying a vehicle operating through the Uber platform.

11. Plaintiffs are informed and believe, and based thereon allege, that at the time of the collision, the Uber driver was logged into the Uber ride-share application, had accepted Plaintiffs' ride request, and was transporting Plaintiffs to their final destination.

12. The traffic collision report and other available documents confirmed that Plaintiffs were passengers on an accepted Uber ride at the time of the collision.

13. At the time of the collision, the Uber vehicle was an insured auto engaged in a prearranged service within the meaning of the Policy, and Plaintiffs were insureds under the Policy.

14. On or about August 31, 2023, while Plaintiffs were passengers in the Uber vehicle, an unidentified third-party driver struck the Uber vehicle from the rear.

15. The unidentified third-party driver fled the scene after the collision and did not provide identifying information.

16. Plaintiffs are informed and believe, and based thereon allege, that the unidentified hit-and-run driver negligently caused the collision by, among other things, failing to maintain a safe distance, failing to keep a proper lookout, failing to control the speed and movement of the striking vehicle, and rear-ending the Uber vehicle occupied by Plaintiffs.

17. The collision was reported as a hit-and-run accident. Plaintiffs, or someone acting on their behalf, reported the collision to law enforcement within the time required by the Policy, or as soon as practicable.

COMPLAINT FOR DAMAGES

3

18. The traffic collision report identified the incident as a hit-and-run collision and reflected that the unidentified vehicle struck the rear of the Uber vehicle occupied by Plaintiffs.

19. As a direct and proximate result of the collision, Plaintiffs sustained bodily injuries, incurred medical expenses, suffered pain and suffering, and sustained other damages in an amount to be determined according to proof.

20. After the collision, Plaintiffs submitted claims to Defendant for benefits under the Policy, including Uninsured/Underinsured Motorist Bodily Injury Coverage.

21. Defendant, directly and/or through its servicing company, claims administrator, agents, employees, or representatives, assigned claim number 23-5875079 to Plaintiffs' claims.

22. Plaintiffs provided Defendant with notice of the collision, claim information, injury information, and documents reasonably available to Plaintiffs.

23. Plaintiffs provided Defendant with notice of the collision, claim information, injury information, and documents reasonably available to Plaintiffs.

24. Despite the available facts showing that Plaintiffs were passengers occupying an Uber vehicle during a prearranged service and were injured by an unidentified hit-and-run driver, Defendant referred Plaintiffs' claims to its Special Investigations Unit ("SIU").

25. Plaintiffs are informed and believe, and based thereon allege, that Defendant referred Plaintiffs' claims to SIU without a reasonable, good-faith basis and despite information confirming that Plaintiffs were passengers during a covered Uber ride.

26. During its claim investigation, Defendant made repeated requests for information and documentation. Plaintiffs complied with Defendant's reasonable requests and provided all responsive information and documents reasonably available to Plaintiffs.

27. Defendant's SIU investigation included requests for documents and information that were irrelevant to coverage, outside Plaintiffs' possession, custody, or control, already provided, or unnecessary to determine whether Plaintiffs were passengers in an Uber vehicle during a covered prearranged service. Plaintiffs are informed and believe, and based thereon allege, that Defendant used the SIU referral and repeated document demands as a pretext to delay, deny, or avoid payment of benefits owed under the Policy.

28. Defendant also requested examinations under oath of Plaintiffs.

**COMPLAINT FOR DAMAGES**

4

**NOTICE OF REMOVAL**                                              **EXHIBIT A**
                                                                    **Page 10**

29. Plaintiffs agreed to participate in examinations under oath and cooperated in scheduling them.

30. The parties discussed and agreed upon potential dates for Plaintiffs' examinations under oath, however, Defendant continued, postponed, or failed to proceed with the examinations on multiple occasions.

31. Plaintiffs remained ready and willing to cooperate with Defendant's reasonable investigation and to provide testimony as reasonably required under the Policy.

32. Defendant ultimately denied coverage without completing Plaintiffs' examinations under oath and without a reasonable basis for refusing to provide benefits under the Policy.

33. By letter dated February 12, 2026, Defendant, directly and/or through its servicing company, claims administrator, agents, employees, or representatives, denied coverage for Plaintiffs' claims. Defendant denied coverage on the stated ground that there is no Uninsured Motorist Bodily Injury Coverage.

34. Defendant denied coverage despite Policy language providing UM/UIM coverage to passengers occupying an insured auto during a prearranged service, and despite facts showing that Plaintiffs were passengers in an Uber vehicle struck by an unidentified hit-and-run driver.

35. Plaintiffs allege that Defendant's stated basis for denial was improper, unsupported by the Policy language, contrary to the facts available to Defendant, and unreasonable because Plaintiffs were passengers occupying an insured Uber vehicle during a prearranged service when they were rear-ended by an unidentified hit-and-run driver.

36. As a direct and proximate result of Defendant's denial of coverage and refusal to provide benefits, Plaintiffs were deprived of insurance benefits owed under the Policy and sustained damages in an amount to be proven at trial.

### FIRST CAUSE OF ACTION

### BREACH OF CONTRACT – THIRD PARTY BENEFICIARY

#### (by Plaintiffs against Defendant and DOES 1-50 Inclusive)

37. Plaintiffs reallege and incorporate herein by reference all of the allegations contained in paragraphs 1 through 36 of this complaint.

COMPLAINT FOR DAMAGES

5

NOTICE OF REMOVAL

EXHIBIT A
Page 11

38. At all relevant times, Defendant issued and underwrote a California Transportation Network Company Commercial Auto Policy, policy number 01230478, for the policy period March 1, 2023, through March 1, 2024, to Uber Technologies, Inc., Rasier, LLC, and related entities (collectively, "Uber") (the "Policy").

39. Plaintiffs are informed and believe, and on that basis allege, that all premiums required for the Policy were paid, accepted, or otherwise not a basis for Defendant's denial of coverage, and that the Policy was in full force and effect on August 31, 2023.

40. The Policy provides Uninsured/Underinsured Motorist Bodily Injury Coverage under Part III. Under Part III, Defendant agreed to pay damages, other than punitive or exemplary damages, that an insured is legally entitled to recover from the owner or operator of an uninsured auto or underinsured auto because of bodily injury sustained by an insured, caused by an accident occurring while the TNC driver is engaged in providing a prearranged service, and arising out of the ownership, maintenance, or use of an uninsured or underinsured auto.

41. The Policy expressly defines "insured," for purposes of Part III, to include "any person while occupying an insured auto while that insured auto is engaged in a prearranged service."

42. The Policy defines "occupying" to mean "in, entering, or exiting."

43. The Policy defines "prearranged service" to include the operation of an insured auto while the driver is logged on to the ride-share application, has recorded acceptance in the ride-share application of a request to provide covered TNC operations, and is traveling to the final destination location of the passenger or passengers.

44. The Policy defines an "uninsured auto" to include a hit-and-run vehicle whose operator or owner cannot be identified and that causes bodily injury to an insured by striking an insured auto, subject to the Policy's reporting and claim requirements.

45. The Policy provides Uninsured/Underinsured Motorist Bodily Injury Coverage for Rideshare Period 3 in the amount of $1,000,000 per accident while a passenger is on-board.

46. On August 31, 2023, Plaintiffs used Uber's ride-share application to request transportation.

47. On August 31, 2023, Plaintiffs were passengers occupying the Uber vehicle during a prearranged service within the meaning of the Policy.

**COMPLAINT FOR DAMAGES**

6

48. While Plaintiffs were occupying the Uber vehicle and traveling to their final destination, another vehicle struck the Uber vehicle.

49. The driver of the striking vehicle fled the scene after the collision and could not be identified.

50. As a result of the collision, Plaintiffs sustained bodily injuries and damages.

51. Plaintiffs are informed and believe, and based thereon allege, that the unidentified hit-and-run driver negligently operated the striking vehicle by, among other things, failing to maintain a safe distance, failing to keep a proper lookout, failing to control the speed and movement of the vehicle, and rear-ending the Uber vehicle occupied by Plaintiffs. The police report reflects that the unidentified driver struck the rear of the vehicle in which Plaintiffs were passengers and then fled the scene without providing identifying information. As a result of the unidentified driver's negligent operation of the vehicle, Plaintiffs sustained bodily injuries and damages. Accordingly, Plaintiffs were legally entitled to recover damages from the unidentified hit-and-run driver.

52. Plaintiffs were insureds and intended beneficiaries under the Policy because the Policy expressly provides UM/UIM coverage to persons occupying an insured auto during a prearranged service, including passengers such as Plaintiffs.

53. Civil Code section 1559 provides that a contract made expressly for the benefit of a third person may be enforced by that third person at any time before the parties rescind it.

54. A third party may bring a breach of contract action against a party to a contract only if the third party establishes not only (1) that it is likely to benefit from the contract, but also (2) that a motivating purpose of the contracting parties is to provide a benefit to the third party, and further (3) that permitting the third party to bring its own breach of contract action against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties. (*Goonewardene v. ADP, LLC* (2019) 6 Cal.5th 817, 830.)

55. Plaintiffs satisfy these requirements. First, Plaintiffs were members of the class expressly protected by the Policy because they were passengers occupying an insured Uber vehicle during a prearranged service.

56. Second, a motivating purpose of the Policy was to provide UM/UIM coverage for persons occupying insured Uber vehicles during covered rideshare operations, including passengers such as Plaintiffs.

**COMPLAINT FOR DAMAGES**

7

57. Third, allowing Plaintiffs to enforce the Policy is consistent with the Policy's objectives and the reasonable expectations of the contracting parties because the Policy expressly provides coverage for passengers on board during Rideshare Period 3 and defines such persons as insureds for purposes of Part III.

58. Plaintiffs complied with all conditions precedent and requirements under the Policy, including but not limited to providing timely notice of the accident, cooperating with Defendant, and providing all reasonably requested information, proof of loss, and documentation available to Plaintiffs. Plaintiffs, or someone on their behalf, timely reported the hit-and-run accident to the police within the time required by the Policy, or as soon as practicable, and provided Defendant with all required claim information and documentation reasonably available to Plaintiffs. To the extent Defendant contends that any condition precedent or Policy requirement was not satisfied, Plaintiffs allege that Defendant waived, excused, prevented, or is estopped from asserting nonperformance of any such condition by denying coverage, refusing to recognize Plaintiffs as insureds, and refusing to provide benefits under the Policy.

59. Defendant breached the Policy by denying coverage, refusing to recognize Plaintiffs as insureds under Part III, refusing to provide UM/UIM benefits owed under the Policy, and/or otherwise failing to perform its contractual obligations.

60. As a direct and proximate result of Defendant's breach of the Policy, Plaintiffs were deprived of insurance benefits owed under the Policy and have suffered damages in an amount to be proven at trial.

61. Plaintiffs are entitled to recover all contractual damages, policy benefits owed, prejudgment interest, costs of suit, and any other relief the Court deems just and proper.

## SECOND CAUSE OF ACTION

## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### (by Plaintiffs against Defendant and DOES 1-50 Inclusive)

62. Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 61 as though fully set forth herein.

63. At all relevant times, Defendant issued and underwrote the Policy identified above, which provided Uninsured/Underinsured Motorist Bodily Injury Coverage for Rideshare Period 3 in the

**COMPLAINT FOR DAMAGES**

8

amount of $1,000,000 per accident while passengers were on board an insured auto during a covered Uber ride.

64. Plaintiffs were insureds under the Policy because they were persons occupying an insured Uber vehicle while that vehicle was engaged in a prearranged service within the meaning of the Policy.

65. In every insurance policy, including the Policy at issue here, there is an implied covenant of good faith and fair dealing. This covenant required Defendant to act fairly and in good faith toward Plaintiffs, to give at least as much consideration to Plaintiffs' interests as it gave to its own interests, and to refrain from unreasonably interfering with Plaintiffs' right to receive benefits owed under the Policy.

66. Plaintiffs performed all, or substantially all, of the significant things required of them under the Policy, including providing timely notice of the collision, cooperating with Defendant's investigation, providing claim information, injury information, proof of loss, and documentation reasonably available to Plaintiffs.

67. Plaintiffs also agreed to participate in examinations under oath and cooperated in scheduling them.

68. To the extent Defendant contends that any Policy condition was not satisfied, Plaintiffs allege that any such condition was waived, excused, prevented, or that Defendant is estopped from asserting nonperformance because Defendant denied coverage, refused to recognize Plaintiffs as insureds, refused to provide benefits, and failed to proceed fairly with its own requested examinations under oath.

69. Plaintiffs suffered a covered loss under the Policy because they sustained bodily injuries and damages while occupying an insured Uber vehicle during a prearranged service, and while the Uber vehicle was struck from the rear by an unidentified hit-and-run vehicle.

70. Plaintiffs were legally entitled to recover damages from the unidentified hit-and-run driver because that driver negligently caused the collision by, among other things, failing to maintain a safe distance, failing to keep a proper lookout, failing to control the speed and movement of the striking vehicle, rear-ending the Uber vehicle occupied by Plaintiffs, and fleeing the scene without providing identifying information.

**COMPLAINT FOR DAMAGES**

9

71. Plaintiffs submitted claims to Defendant for UM/UIM benefits under the Policy. Defendant assigned claim number 23-5875079 to Plaintiffs' claims.

72. Defendant knew, or reasonably should have known, that Plaintiffs were passengers occupying an Uber vehicle during a covered prearranged service at the time of the collision.

73. Defendant knew, or reasonably should have known, that the traffic collision report and other available documents confirmed that Plaintiffs were passengers on an accepted Uber ride at the time of the collision.

74. Defendant knew, or reasonably should have known, that the Uber vehicle was rear-ended by an unidentified hit-and-run driver who fled the scene without providing identifying information.

75. Defendant further knew, or reasonably should have known, that the Policy expressly provided UM/UIM coverage to persons occupying an insured auto during a prearranged service and that the Policy provided Rideshare Period 3 UM/UIM coverage while passengers were on board.

76. Despite these facts and Policy provisions, Defendant failed to conduct a full, fair, prompt, and reasonable investigation of Plaintiffs' claims.

77. Instead of fairly evaluating the available coverage facts, Defendant referred Plaintiffs' claims to its Special Investigations Unit ("SIU") despite information confirming that Plaintiffs were passengers during a covered Uber ride and despite the traffic collision report identifying the incident as a hit-and-run rear-end collision.

78. Defendant's SIU investigation was not reasonably limited to determining whether Plaintiffs were insured passengers, whether the Uber vehicle was engaged in a prearranged service, whether the striking vehicle was an uninsured hit-and-run vehicle, or whether Plaintiffs sustained bodily injuries and damages.

79. Defendant, directly and/or through its servicing company, counsels, claims administrator, agents, employees, or representatives, demanded that Plaintiffs produce copies of their residential and cellular telephone records, including call history, text-message logs, and bills for August 2023 and September 2023, and further instructed Plaintiffs that screenshots or Excel spreadsheets would not be accepted.

**COMPLAINT FOR DAMAGES**

10

80. Defendant also demanded all communications using WhatsApp, WeChat, or any social-media messaging platforms that Plaintiffs used to communicate with any person or entity regarding the subject loss for August 2023 and September 2023.

81. Defendant further demanded copies of any and all bank statements in Plaintiffs' names, including checking, savings, credit-card, and mobile-payment accounts, including but not limited to Venmo, Zelle, Cash App, and PayPal, for August 2023 and September 2023.

82. Defendant also demanded paychecks, paycheck stubs, receipts, contracts, profit-and-loss statements, W-2 forms, state and federal income-tax returns, and other documents establishing any and all sources of Plaintiffs' personal income for the period beginning twelve months before the collision.

83. These requests were overbroad, invasive, and not reasonably tailored to the coverage issues presented by Plaintiffs' UM/UIM claims. The requests sought private financial records, tax records, bank-account information, mobile-payment records, telephone records, text-message logs, and social-media communications without reasonably limiting the requests to information necessary to determine whether Plaintiffs were passengers in an insured Uber vehicle during a prearranged service, whether the collision involved an unidentified hit-and-run vehicle, or whether Plaintiffs sustained bodily injuries and damages.

84. Defendant's requests were also unreasonable because the central coverage facts were already known or readily available to Defendant, including that Plaintiffs were passengers during an accepted Uber ride, that the Uber vehicle was struck from the rear by an unidentified hit-and-run driver, and that the Policy provided UM/UIM coverage to passengers occupying an insured auto during a prearranged service.

85. Plaintiffs complied with Defendant's reasonable requests and provided all responsive information and documents reasonably available to them.

86. Plaintiffs are informed and believe, and based thereon allege, that Defendant used the SIU referral, repeated overbroad document demands, and alleged outstanding requests as a pretext to delay, deny, or avoid payment of UM/UIM benefits owed under the Policy.

87. Defendant also requested examinations under oath of Plaintiffs. Plaintiffs agreed to participate in examinations under oath and cooperated in scheduling them.

**COMPLAINT FOR DAMAGES**

11

**NOTICE OF REMOVAL**                                                      **EXHIBIT A**
                                                                              **Page 17**

88. Although Plaintiffs remained ready and willing to provide testimony as reasonably required under the Policy, Defendant continued, postponed, cancelled, or failed to proceed with the examinations under oath on multiple occasions.

89. Defendant then denied coverage without completing Plaintiffs' examinations under oath and without completing a fair and reasonable investigation of Plaintiffs' claims.

90. By letter dated February 12, 2026, Defendant, directly and/or through its servicing company, claims administrator, agents, employees, or representatives, denied coverage for Plaintiffs' claims on the stated ground that there was no Uninsured Motorist Bodily Injury Coverage.

91. Defendant's stated basis for denial was unreasonable, without proper cause, unsupported by the Policy language, and contrary to the facts known or reasonably available to Defendant at the time of denial.

92. Defendant did not deny coverage because Plaintiffs failed to provide material information necessary to determine coverage. Instead, Defendant denied coverage on the stated ground that there was no Uninsured Motorist Bodily Injury Coverage, despite Policy language providing UM/UIM coverage to passengers occupying an insured auto during a prearranged service.

93. Defendant unreasonably denied coverage despite facts showing that Plaintiffs were passengers in an accepted Uber ride, that the Uber vehicle was rear-ended by an unidentified hit-and-run driver, that Plaintiffs sustained bodily injuries and damages, and that the Policy provided UM/UIM coverage to passengers occupying an insured auto during a prearranged service.

94. Defendant further acted unreasonably and without proper cause by refusing to recognize Plaintiffs as insureds under Part III of the Policy, refusing to provide UM/UIM benefits owed under the Policy, relying on an unreasonable interpretation of the Policy, ignoring or disregarding facts supporting coverage, and placing its own financial interests above Plaintiffs' interests.

95. Defendant's conduct was not a mere mistake, honest coverage dispute, or simple failure to exercise reasonable care. Rather, Defendant acted unreasonably and without proper cause in a manner that deprived Plaintiffs of the benefits of the Policy.

96. Defendant's unreasonable denial of coverage, failure to pay benefits, failure to conduct a fair investigation, use of overbroad and invasive document demands, failure to complete the

**COMPLAINT FOR DAMAGES**

12

requested examinations under oath, and use of improper delay tactics breached the implied covenant of good faith and fair dealing.

97. As a direct and proximate result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiffs were deprived of policy benefits, suffered economic loss, incurred expenses, suffered emotional distress, and sustained other damages in an amount to be proven at trial.

98. Plaintiffs are entitled to recover all damages proximately caused by Defendant's bad-faith conduct, including but not limited to unpaid policy benefits, consequential damages, emotional-distress damages, prejudgment interest, costs of suit, and any other relief the Court deems just and proper.

### THIRD CAUSE OF ACTION

### DECLARATORY RELIEF RE RIGHTS AND DUTIES UNDER INSURANCE POLICY

(by Plaintiffs against Defendant and DOES 1-50 inclusive)

99. Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 99 of this Complaint as though fully set forth herein.

100. An actual controversy has arisen and now exists between Plaintiffs and Defendant concerning the parties' respective rights and duties under the Policy.

101. Plaintiffs contend that they are insureds under Part III of the Policy because they were passengers occupying an insured Uber vehicle while that vehicle was engaged in a prearranged service.

102. Plaintiffs further contend that the Policy provides Uninsured/Underinsured Motorist Bodily Injury Coverage for Rideshare Period 3 in the amount of $1,000,000 per accident while passengers are on board an insured auto during a covered Uber ride.

103. Plaintiffs further contend that the August 31, 2023, collision involved an uninsured auto within the meaning of the Policy because the Uber vehicle occupied by Plaintiffs was struck from the rear by an unidentified hit-and-run driver who fled the scene and did not provide identifying information.

104. Plaintiffs further contend that they complied with all applicable conditions precedent and Policy requirements, including providing notice of the collision, cooperating with Defendant's

investigation, providing reasonably available claim information and documentation, and reporting the hit-and-run collision to law enforcement within the time required by the Policy, or as soon as practicable.

105. To the extent Defendant contends that any condition precedent or Policy requirement was not satisfied, Plaintiffs contend that Defendant waived, excused, prevented, or is estopped from asserting nonperformance of any such condition by denying coverage, refusing to recognize Plaintiffs as insureds, refusing to provide benefits, and failing to proceed fairly with its own requested investigation and examinations under oath.

106. Defendant disputes Plaintiffs' rights under the Policy and, by letter dated February 12, 2026, denied coverage for Plaintiffs' claims on the stated ground that there was no Uninsured Motorist Bodily Injury Coverage.

107. Plaintiffs dispute Defendant's denial and contend that Defendant's position is contrary to the Policy language, contrary to the facts available to Defendant, and contrary to Plaintiffs' rights as insured passengers under Part III of the Policy.

108. Plaintiffs are informed and believe, and based thereon allege, that Defendant continues to deny or dispute coverage and refuses to recognize Plaintiffs' right to receive UM/UIM benefits under the Policy.

109. A judicial declaration is necessary and appropriate to determine the parties' rights and duties under the Policy, including but not limited to whether Plaintiffs are insureds under the Policy, whether the August 31, 2023 collision falls within the Policy's UM/UIM coverage, whether the unidentified hit-and-run vehicle qualifies as an uninsured auto, whether Defendant owes coverage obligations to Plaintiffs, and whether Defendant may deny coverage on the stated ground that there is no Uninsured Motorist Bodily Injury Coverage.

110. Plaintiffs seek a judicial declaration that Plaintiffs were insureds under Part III of the Policy at the time of the August 31, 2023, collision.

111. Plaintiffs seek a judicial declaration that the Uber vehicle occupied by Plaintiffs was an insured auto engaged in a prearranged service within the meaning of the Policy.

112. Plaintiffs seek a judicial declaration that the unidentified hit-and-run vehicle qualifies as an uninsured auto within the meaning of the Policy.

**COMPLAINT FOR DAMAGES**

14

113. Plaintiffs seek a judicial declaration that Plaintiffs' claims fall within the Uninsured/Underinsured Motorist Bodily Injury Coverage provided by the Policy, subject to proof of Plaintiffs' injuries, damages, and legal entitlement to recover from the unidentified hit-and-run driver.

114. Plaintiffs seek a judicial declaration that Defendant's stated basis for denying coverage that there was no Uninsured Motorist Bodily Injury Coverage, is incorrect, invalid, and contrary to the Policy.

115. Plaintiffs seek a judicial declaration that Defendant is obligated to recognize Plaintiffs as insureds, provide coverage, fairly adjust Plaintiffs' claims, and pay all UM/UIM benefits owed under the Policy, subject to the Policy limits and proof of damages.

116. A declaration of the parties' rights and duties will resolve the existing controversy and uncertainty regarding coverage, Plaintiffs' status as insureds, and Defendant's obligations under the Policy.

117. Plaintiffs therefore request a judicial declaration in their favor and against Defendant as set forth above, together with costs of suit and any other relief the Court deems just and proper.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendant and DOES 1 to 50, inclusive, as follows:

1. For all unpaid insurance benefits owed under the Policy, including Uninsured/Underinsured Motorist Bodily Injury Coverage benefits, subject to the applicable Policy limits and according to proof;

2. For general damages, including emotional-distress damages, in an amount according to proof at trial;

3. For special damages, including economic losses, expenses, and other out-of-pocket losses, in an amount according to proof at trial;

4. For consequential damages proximately caused by Defendant's conduct, in an amount according to proof at trial;

5. For reasonable costs of this suit and attorneys' fees;

**COMPLAINT FOR DAMAGES**

15

6. For a judicial declaration regarding the parties' rights and duties under the Policy, including that Plaintiffs were insureds under Part III of the Policy, that Plaintiffs' claims fall within the Policy's Uninsured/Underinsured Motorist Bodily Injury Coverage, and that Defendant is obligated to recognize coverage and provide all benefits owed under the Policy, subject to the Policy limits and proof of damages;

7. For prejudgment and post-judgment interest according to law;

8. For such other and further relief as the Court deems just and proper.

///

Dated: 05/08/2026                           A&M LAW, APC


*Smbat Mamyan*
_____
Smbat Mamyan, Esq.
Attorney for Plaintiffs,
KAREN KARAKHANIAN;
HERMINE ARAKELYAN

**COMPLAINT FOR DAMAGES**

16

**NOTICE OF REMOVAL**                                                    **EXHIBIT A**
                                                                          **Page 22**


**® Wolters Kluwer**

## Service of Process Transmittal Summary

**TO:** Mary Anne Viau
Progressive Casualty Insurance Company
300 N COMMONS BLVD
CLEVELAND, OH 44143-1589

**RE:** **Process Served in California**

**FOR:** BLUE HILL SPECIALTY INSURANCE COMPANY INC.  (Domestic State: IL)

ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:

| | |
|---|---|
| **TITLE OF ACTION:** | KAREN KARAKHANIAN, an individual; HERMINE ARAKELYAN, an individual vs. BLUE HILL SPECIALTY INSURANCE COMPANY, Inc. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Cover Sheet, Attachment(s), Addendum and Statement, Notice |
| **COURT/AGENCY:** | Los Angeles County - Superior Court - Central District, CA<br>Case # 26STCV14805 |
| **NATURE OF ACTION:** | Insurance Litigation |
| **PROCESS SERVED ON:** | C T Corporation System, GLENDALE, CA |
| **DATE/METHOD OF SERVICE:** | By Process Server on 05/21/2026 at 13:22 |
| **JURISDICTION SERVED:** | California |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service |
| **ATTORNEY(S)/SENDER(S):** | Smbat Mamyan<br>A&M Law, APC<br>16530 Ventura Blvd., Suite 627<br>Encino, CA 91436<br>818-855-1858 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 05/22/2026, Expected Purge Date: 05/27/2026<br><br>Image SOP<br><br>Email Notification,  John L Hall  john_hall_10@progressive.com<br><br>Email Notification,  Anetra Gibson  anetra_gibson@progressive.com<br><br>Email Notification,  Mary Anne Viau  mary_anne_viau@progressive.com |
| **REGISTERED AGENT CONTACT:** | C T Corporation System<br>330 N BRAND BLVD<br>STE 700<br>GLENDALE, CA 91203<br>8775647529<br>MajorAccountTeam1@wolterskluwer.com |

**NOTICE OF REMOVAL**

**EXHIBIT B**
**Page 23**



**CT Corporation**
**Service of Process Notification**
05/21/2026
CT Log Number 552287897

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

**NOTICE OF REMOVAL**

**EXHIBIT B**
**Page 24**

# PROCESS SERVER DELIVERY DETAILS

**Date:**                          Thu, May 21, 2026
**Server Name:**                   DROP SERVICE

| Entity Served | BLUE HILL SPECIALTY INSURANCE COMPANY |
|---|---|
| Case Number | 26STCV14805 |
| Jurisdiction | CA |

| Inserts |
|---|
|  |



**NOTICE OF REMOVAL**                                      **EXHIBIT B**
                                                          **Page 25**

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

| | |
|---|---|
| **NOTICE TO DEFENDANT:**<br>*(AVISO AL DEMANDADO):*<br>Blue Hill Specialty Insurance Company, Inc., an Illinois Corporation, and Does 1 to 50, Inclusive<br><br>**YOU ARE BEING SUED BY PLAINTIFF:**<br>*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*<br><br>Karen Karakhanian, an individual; Hermine Arakelyan, an individual | *FOR COURT USE ONLY*<br>*(SOLO PARA USO DE LA CORTE)*<br><br>**Electronically FILED by**<br>**Superior Court of California,**<br>**County of Los Angeles**<br>**5/08/2026 2:53 PM**<br>**David W. Slayton,**<br>**Executive Officer/Clerk of Court,**<br>**By D. Williams, Deputy Clerk** |

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*  Stanley Mosk Courthouse<br>111 North Hill Street<br>Los Angeles, CA 90012 | CASE NUMBER: *(Número del Caso):*<br><br>**26STCV14805** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Smbat Mamyan, Esq.; A&M Law, APC; 16530 Ventura Blvd., Suite 627, Encino, CA 91436; Tel: (818) 855-1858

| DATE:<br>*(Fecha)*  05/08/2026 | Clerk, by  David W. Slayton, Executive Officer/Clerk of Court  , Deputy<br>*(Secretario)*  D. Williams                    *(Adjunto)* |
|---|---|

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010).)*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)          ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)          ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date)*

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>*www.courts.ca.gov* |

**NOTICE OF REMOVAL**

**EXHIBIT B**
**Page 26**

Electronically FILED by
Superior Court of California,
County of Los Angeles
5/08/2026 2:53 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By D. Williams, Deputy Clerk

Smbat Mamyan, Esq. SBN 323417
Serob Alajanyan, Esq. SBN 331708
Alibi Akylas, Esq. SBN 365126
A&M LAW, APC
16530 Ventura Blvd, Ste 627
Encino, CA 91436
Phone: (818) 855-1858
Fax: (855) 630-9997
Email: SamM@AMLawFirm.net; AlibiA@AMLawFirm.net

Attorney for Plaintiffs,
KAREN KARAKHANIAN, HERMINE ARAKELYAN

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| KAREN KARAKHANIAN, an individual; HERMINE ARAKELYAN, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> BLUE HILL SPECIALTY INSURANCE COMPANY, Inc., an Illinois Corporation, AND DOES 1 TO 50, INCLUSIVE, <br><br> Defendant. | Case No.: 26STCV14805 <br><br> **COMPLAINT FOR DAMAGES** <br> 1. BREACH OF CONTRACT – THIRD PARTY BENEFICIARY <br> 2. BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING <br> 3. DECLARATORY RELIEF RE RIGHTS AND DUTIES UNDER INSURANCE POLICY <br><br> UNLIMITED CIVIL CASE <br><br> [AMOUNT DEMANDED EXCEEDS $35,000] |

Plaintiffs, KAREN KARAKHANIAN and HERMINE ARAKELYAN (hereinafter "**Plaintiffs**") sue Defendant, BLUE HILL SPECIALTY INSURANCE COMPANY, Inc. (hereinafter "**Defendant**"), and alleges as follows:

///

///

///

///

**COMPLAINT FOR DAMAGES**

1

## PARTIES, JURISDICTION AND VENUE

1. Plaintiffs are natural persons and residents of Los Angeles County, California.

2. Plaintiffs are informed and believe, and based thereon allege, that Defendant is, and at all relevant times was, an insurance company organized and existing under the laws of the State of Illinois, and was authorized, approved, permitted, or otherwise qualified to issue, underwrite, administer, service, and/or conduct insurance-related business in the State of California.

3. This Court has subject-matter jurisdiction over this action because this is an unlimited civil action and the amount in controversy exceeds the jurisdictional minimum of this Court.

4. This Court has personal jurisdiction over Defendant because Defendant conducted insurance-related business in California, issued and/or underwrote an insurance policy providing coverage for California transportation-network-company operations, accepted premiums for California risks, and the acts and omissions giving rise to this action occurred in California. California courts may exercise jurisdiction on any basis not inconsistent with the California or United States Constitutions.

5. Venue is proper in this Court pursuant to Code of Civil Procedure section 395.5 because Defendant is a corporation and/or association, the Policy was to be performed in this County, Defendant's obligations and liabilities under the Policy arose in this County, Plaintiffs' claims for benefits arose in this County, and Defendant's breach occurred in this County when Defendant denied coverage and/or failed to pay benefits owed to Plaintiffs. Section 395.5 allows suit against a corporation or association in the county where the contract is made or to be performed, where the obligation or liability arises, or where the breach occurs.

6. Plaintiffs are informed and believe, and based thereon allege, that at all relevant times, each Defendant, including DOES 1 through 50, was the agent, employee, representative, servant, joint venturer, and/or co-conspirator of each of the remaining Defendants, and in doing the acts alleged herein, acted within the course and scope of such relationship and/or with the permission, consent, authorization, or ratification of the remaining Defendants.

///

///

///

**COMPLAINT FOR DAMAGES**

2

## GENERAL ALLEGATIONS

7.  At all relevant times, Defendant issued and underwrote a California Transportation Network Company Commercial Auto Policy, Policy No. 01230478, to Uber Technologies, Inc., Rasier, LLC, and related entities, for the policy period March 1, 2023 through March 1, 2024.

8.  The Policy provided Uninsured/Underinsured Motorist Bodily Injury Coverage for Rideshare Period 3 in the amount of $1,000,000 per accident while passengers were on board an insured auto during a covered Uber ride.

9.  On or about August 31, 2023, Plaintiffs used the Uber ride-share application to request transportation.

10. On or about August 31, 2023, Plaintiffs were passengers occupying a vehicle operating through the Uber platform.

11. Plaintiffs are informed and believe, and based thereon allege, that at the time of the collision, the Uber driver was logged into the Uber ride-share application, had accepted Plaintiffs' ride request, and was transporting Plaintiffs to their final destination.

12. The traffic collision report and other available documents confirmed that Plaintiffs were passengers on an accepted Uber ride at the time of the collision.

13. At the time of the collision, the Uber vehicle was an insured auto engaged in a prearranged service within the meaning of the Policy, and Plaintiffs were insureds under the Policy.

14. On or about August 31, 2023, while Plaintiffs were passengers in the Uber vehicle, an unidentified third-party driver struck the Uber vehicle from the rear.

15. The unidentified third-party driver fled the scene after the collision and did not provide identifying information.

16. Plaintiffs are informed and believe, and based thereon allege, that the unidentified hit-and-run driver negligently caused the collision by, among other things, failing to maintain a safe distance, failing to keep a proper lookout, failing to control the speed and movement of the striking vehicle, and rear-ending the Uber vehicle occupied by Plaintiffs.

17. The collision was reported as a hit-and-run accident. Plaintiffs, or someone acting on their behalf, reported the collision to law enforcement within the time required by the Policy, or as soon as practicable.

### COMPLAINT FOR DAMAGES

3

NOTICE OF REMOVAL

EXHIBIT B
Page 29

18. The traffic collision report identified the incident as a hit-and-run collision and reflected that the unidentified vehicle struck the rear of the Uber vehicle occupied by Plaintiffs.

19. As a direct and proximate result of the collision, Plaintiffs sustained bodily injuries, incurred medical expenses, suffered pain and suffering, and sustained other damages in an amount to be determined according to proof.

20. After the collision, Plaintiffs submitted claims to Defendant for benefits under the Policy, including Uninsured/Underinsured Motorist Bodily Injury Coverage.

21. Defendant, directly and/or through its servicing company, claims administrator, agents, employees, or representatives, assigned claim number 23-5875079 to Plaintiffs' claims.

22. Plaintiffs provided Defendant with notice of the collision, claim information, injury information, and documents reasonably available to Plaintiffs.

23. Plaintiffs provided Defendant with notice of the collision, claim information, injury information, and documents reasonably available to Plaintiffs.

24. Despite the available facts showing that Plaintiffs were passengers occupying an Uber vehicle during a prearranged service and were injured by an unidentified hit-and-run driver, Defendant referred Plaintiffs' claims to its Special Investigations Unit ("SIU").

25. Plaintiffs are informed and believe, and based thereon allege, that Defendant referred Plaintiffs' claims to SIU without a reasonable, good-faith basis and despite information confirming that Plaintiffs were passengers during a covered Uber ride.

26. During its claim investigation, Defendant made repeated requests for information and documentation. Plaintiffs complied with Defendant's reasonable requests and provided all responsive information and documents reasonably available to Plaintiffs.

27. Defendant's SIU investigation included requests for documents and information that were irrelevant to coverage, outside Plaintiffs' possession, custody, or control, already provided, or unnecessary to determine whether Plaintiffs were passengers in an Uber vehicle during a covered prearranged service. Plaintiffs are informed and believe, and based thereon allege, that Defendant used the SIU referral and repeated document demands as a pretext to delay, deny, or avoid payment of benefits owed under the Policy.

28. Defendant also requested examinations under oath of Plaintiffs.

**COMPLAINT FOR DAMAGES**

4

29. Plaintiffs agreed to participate in examinations under oath and cooperated in scheduling them.

30. The parties discussed and agreed upon potential dates for Plaintiffs' examinations under oath, however, Defendant continued, postponed, or failed to proceed with the examinations on multiple occasions.

31. Plaintiffs remained ready and willing to cooperate with Defendant's reasonable investigation and to provide testimony as reasonably required under the Policy.

32. Defendant ultimately denied coverage without completing Plaintiffs' examinations under oath and without a reasonable basis for refusing to provide benefits under the Policy.

33. By letter dated February 12, 2026, Defendant, directly and/or through its servicing company, claims administrator, agents, employees, or representatives, denied coverage for Plaintiffs' claims. Defendant denied coverage on the stated ground that there is no Uninsured Motorist Bodily Injury Coverage.

34. Defendant denied coverage despite Policy language providing UM/UIM coverage to passengers occupying an insured auto during a prearranged service, and despite facts showing that Plaintiffs were passengers in an Uber vehicle struck by an unidentified hit-and-run driver.

35. Plaintiffs allege that Defendant's stated basis for denial was improper, unsupported by the Policy language, contrary to the facts available to Defendant, and unreasonable because Plaintiffs were passengers occupying an insured Uber vehicle during a prearranged service when they were rear-ended by an unidentified hit-and-run driver.

36. As a direct and proximate result of Defendant's denial of coverage and refusal to provide benefits, Plaintiffs were deprived of insurance benefits owed under the Policy and sustained damages in an amount to be proven at trial.

### FIRST CAUSE OF ACTION

### BREACH OF CONTRACT – THIRD PARTY BENEFICIARY

### (by Plaintiffs against Defendant and DOES 1-50 Inclusive)

37. Plaintiffs reallege and incorporate herein by reference all of the allegations contained in paragraphs 1 through 36 of this complaint.

**COMPLAINT FOR DAMAGES**

5

38. At all relevant times, Defendant issued and underwrote a California Transportation Network Company Commercial Auto Policy, policy number 01230478, for the policy period March 1, 2023, through March 1, 2024, to Uber Technologies, Inc., Rasier, LLC, and related entities (collectively, "Uber") (the "Policy").

39. Plaintiffs are informed and believe, and on that basis allege, that all premiums required for the Policy were paid, accepted, or otherwise not a basis for Defendant's denial of coverage, and that the Policy was in full force and effect on August 31, 2023.

40. The Policy provides Uninsured/Underinsured Motorist Bodily Injury Coverage under Part III. Under Part III, Defendant agreed to pay damages, other than punitive or exemplary damages, that an insured is legally entitled to recover from the owner or operator of an uninsured auto or underinsured auto because of bodily injury sustained by an insured, caused by an accident occurring while the TNC driver is engaged in providing a prearranged service, and arising out of the ownership, maintenance, or use of an uninsured or underinsured auto.

41. The Policy expressly defines "insured," for purposes of Part III, to include "any person while occupying an insured auto while that insured auto is engaged in a prearranged service."

42. The Policy defines "occupying" to mean "in, entering, or exiting."

43. The Policy defines "prearranged service" to include the operation of an insured auto while the driver is logged on to the ride-share application, has recorded acceptance in the ride-share application of a request to provide covered TNC operations, and is traveling to the final destination location of the passenger or passengers.

44. The Policy defines an "uninsured auto" to include a hit-and-run vehicle whose operator or owner cannot be identified and that causes bodily injury to an insured by striking an insured auto, subject to the Policy's reporting and claim requirements.

45. The Policy provides Uninsured/Underinsured Motorist Bodily Injury Coverage for Rideshare Period 3 in the amount of $1,000,000 per accident while a passenger is on-board.

46. On August 31, 2023, Plaintiffs used Uber's ride-share application to request transportation.

47. On August 31, 2023, Plaintiffs were passengers occupying the Uber vehicle during a prearranged service within the meaning of the Policy.

**COMPLAINT FOR DAMAGES**

6

48. While Plaintiffs were occupying the Uber vehicle and traveling to their final destination, another vehicle struck the Uber vehicle.

49. The driver of the striking vehicle fled the scene after the collision and could not be identified.

50. As a result of the collision, Plaintiffs sustained bodily injuries and damages.

51. Plaintiffs are informed and believe, and based thereon allege, that the unidentified hit-and-run driver negligently operated the striking vehicle by, among other things, failing to maintain a safe distance, failing to keep a proper lookout, failing to control the speed and movement of the vehicle, and rear-ending the Uber vehicle occupied by Plaintiffs. The police report reflects that the unidentified driver struck the rear of the vehicle in which Plaintiffs were passengers and then fled the scene without providing identifying information. As a result of the unidentified driver's negligent operation of the vehicle, Plaintiffs sustained bodily injuries and damages. Accordingly, Plaintiffs were legally entitled to recover damages from the unidentified hit-and-run driver.

52. Plaintiffs were insureds and intended beneficiaries under the Policy because the Policy expressly provides UM/UIM coverage to persons occupying an insured auto during a prearranged service, including passengers such as Plaintiffs.

53. Civil Code section 1559 provides that a contract made expressly for the benefit of a third person may be enforced by that third person at any time before the parties rescind it.

54. A third party may bring a breach of contract action against a party to a contract only if the third party establishes not only (1) that it is likely to benefit from the contract, but also (2) that a motivating purpose of the contracting parties is to provide a benefit to the third party, and further (3) that permitting the third party to bring its own breach of contract action against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties. (*Goonewardene v. ADP, LLC* (2019) 6 Cal.5th 817, 830.)

55. Plaintiffs satisfy these requirements. First, Plaintiffs were members of the class expressly protected by the Policy because they were passengers occupying an insured Uber vehicle during a prearranged service.

56. Second, a motivating purpose of the Policy was to provide UM/UIM coverage for persons occupying insured Uber vehicles during covered rideshare operations, including passengers such as Plaintiffs.

**COMPLAINT FOR DAMAGES**

7

57. Third, allowing Plaintiffs to enforce the Policy is consistent with the Policy's objectives and the reasonable expectations of the contracting parties because the Policy expressly provides coverage for passengers on board during Rideshare Period 3 and defines such persons as insureds for purposes of Part III.

58. Plaintiffs complied with all conditions precedent and requirements under the Policy, including but not limited to providing timely notice of the accident, cooperating with Defendant, and providing all reasonably requested information, proof of loss, and documentation available to Plaintiffs. Plaintiffs, or someone on their behalf, timely reported the hit-and-run accident to the police within the time required by the Policy, or as soon as practicable, and provided Defendant with all required claim information and documentation reasonably available to Plaintiffs. To the extent Defendant contends that any condition precedent or Policy requirement was not satisfied, Plaintiffs allege that Defendant waived, excused, prevented, or is estopped from asserting nonperformance of any such condition by denying coverage, refusing to recognize Plaintiffs as insureds, and refusing to provide benefits under the Policy.

59. Defendant breached the Policy by denying coverage, refusing to recognize Plaintiffs as insureds under Part III, refusing to provide UM/UIM benefits owed under the Policy, and/or otherwise failing to perform its contractual obligations.

60. As a direct and proximate result of Defendant's breach of the Policy, Plaintiffs were deprived of insurance benefits owed under the Policy and have suffered damages in an amount to be proven at trial.

61. Plaintiffs are entitled to recover all contractual damages, policy benefits owed, prejudgment interest, costs of suit, and any other relief the Court deems just and proper.

## SECOND CAUSE OF ACTION

## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### (by Plaintiffs against Defendant and DOES 1-50 Inclusive)

62. Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 61 as though fully set forth herein.

63. At all relevant times, Defendant issued and underwrote the Policy identified above, which provided Uninsured/Underinsured Motorist Bodily Injury Coverage for Rideshare Period 3 in the

COMPLAINT FOR DAMAGES

8

amount of $1,000,000 per accident while passengers were on board an insured auto during a covered Uber ride.

64. Plaintiffs were insureds under the Policy because they were persons occupying an insured Uber vehicle while that vehicle was engaged in a prearranged service within the meaning of the Policy.

65. In every insurance policy, including the Policy at issue here, there is an implied covenant of good faith and fair dealing. This covenant required Defendant to act fairly and in good faith toward Plaintiffs, to give at least as much consideration to Plaintiffs' interests as it gave to its own interests, and to refrain from unreasonably interfering with Plaintiffs' right to receive benefits owed under the Policy.

66. Plaintiffs performed all, or substantially all, of the significant things required of them under the Policy, including providing timely notice of the collision, cooperating with Defendant's investigation, providing claim information, injury information, proof of loss, and documentation reasonably available to Plaintiffs.

67. Plaintiffs also agreed to participate in examinations under oath and cooperated in scheduling them.

68. To the extent Defendant contends that any Policy condition was not satisfied, Plaintiffs allege that any such condition was waived, excused, prevented, or that Defendant is estopped from asserting nonperformance because Defendant denied coverage, refused to recognize Plaintiffs as insureds, refused to provide benefits, and failed to proceed fairly with its own requested examinations under oath.

69. Plaintiffs suffered a covered loss under the Policy because they sustained bodily injuries and damages while occupying an insured Uber vehicle during a prearranged service, and while the Uber vehicle was struck from the rear by an unidentified hit-and-run vehicle.

70. Plaintiffs were legally entitled to recover damages from the unidentified hit-and-run driver because that driver negligently caused the collision by, among other things, failing to maintain a safe distance, failing to keep a proper lookout, failing to control the speed and movement of the striking vehicle, rear-ending the Uber vehicle occupied by Plaintiffs, and fleeing the scene without providing identifying information.

**COMPLAINT FOR DAMAGES**

9

71. Plaintiffs submitted claims to Defendant for UM/UIM benefits under the Policy. Defendant assigned claim number 23-5875079 to Plaintiffs' claims.

72. Defendant knew, or reasonably should have known, that Plaintiffs were passengers occupying an Uber vehicle during a covered prearranged service at the time of the collision.

73. Defendant knew, or reasonably should have known, that the traffic collision report and other available documents confirmed that Plaintiffs were passengers on an accepted Uber ride at the time of the collision.

74. Defendant knew, or reasonably should have known, that the Uber vehicle was rear-ended by an unidentified hit-and-run driver who fled the scene without providing identifying information.

75. Defendant further knew, or reasonably should have known, that the Policy expressly provided UM/UIM coverage to persons occupying an insured auto during a prearranged service and that the Policy provided Rideshare Period 3 UM/UIM coverage while passengers were on board.

76. Despite these facts and Policy provisions, Defendant failed to conduct a full, fair, prompt, and reasonable investigation of Plaintiffs' claims.

77. Instead of fairly evaluating the available coverage facts, Defendant referred Plaintiffs' claims to its Special Investigations Unit ("SIU") despite information confirming that Plaintiffs were passengers during a covered Uber ride and despite the traffic collision report identifying the incident as a hit-and-run rear-end collision.

78. Defendant's SIU investigation was not reasonably limited to determining whether Plaintiffs were insured passengers, whether the Uber vehicle was engaged in a prearranged service, whether the striking vehicle was an uninsured hit-and-run vehicle, or whether Plaintiffs sustained bodily injuries and damages.

79. Defendant, directly and/or through its servicing company, counsels, claims administrator, agents, employees, or representatives, demanded that Plaintiffs produce copies of their residential and cellular telephone records, including call history, text-message logs, and bills for August 2023 and September 2023, and further instructed Plaintiffs that screenshots or Excel spreadsheets would not be accepted.

**COMPLAINT FOR DAMAGES**

10

80. Defendant also demanded all communications using WhatsApp, WeChat, or any social-media messaging platforms that Plaintiffs used to communicate with any person or entity regarding the subject loss for August 2023 and September 2023.

81. Defendant further demanded copies of any and all bank statements in Plaintiffs' names, including checking, savings, credit-card, and mobile-payment accounts, including but not limited to Venmo, Zelle, Cash App, and PayPal, for August 2023 and September 2023.

82. Defendant also demanded paychecks, paycheck stubs, receipts, contracts, profit-and-loss statements, W-2 forms, state and federal income-tax returns, and other documents establishing any and all sources of Plaintiffs' personal income for the period beginning twelve months before the collision.

83. These requests were overbroad, invasive, and not reasonably tailored to the coverage issues presented by Plaintiffs' UM/UIM claims. The requests sought private financial records, tax records, bank-account information, mobile-payment records, telephone records, text-message logs, and social-media communications without reasonably limiting the requests to information necessary to determine whether Plaintiffs were passengers in an insured Uber vehicle during a prearranged service, whether the collision involved an unidentified hit-and-run vehicle, or whether Plaintiffs sustained bodily injuries and damages.

84. Defendant's requests were also unreasonable because the central coverage facts were already known or readily available to Defendant, including that Plaintiffs were passengers during an accepted Uber ride, that the Uber vehicle was struck from the rear by an unidentified hit-and-run driver, and that the Policy provided UM/UIM coverage to passengers occupying an insured auto during a prearranged service.

85. Plaintiffs complied with Defendant's reasonable requests and provided all responsive information and documents reasonably available to them.

86. Plaintiffs are informed and believe, and based thereon allege, that Defendant used the SIU referral, repeated overbroad document demands, and alleged outstanding requests as a pretext to delay, deny, or avoid payment of UM/UIM benefits owed under the Policy.

87. Defendant also requested examinations under oath of Plaintiffs. Plaintiffs agreed to participate in examinations under oath and cooperated in scheduling them.

**COMPLAINT FOR DAMAGES**

11

88. Although Plaintiffs remained ready and willing to provide testimony as reasonably required under the Policy, Defendant continued, postponed, cancelled, or failed to proceed with the examinations under oath on multiple occasions.

89. Defendant then denied coverage without completing Plaintiffs' examinations under oath and without completing a fair and reasonable investigation of Plaintiffs' claims.

90. By letter dated February 12, 2026, Defendant, directly and/or through its servicing company, claims administrator, agents, employees, or representatives, denied coverage for Plaintiffs' claims on the stated ground that there was no Uninsured Motorist Bodily Injury Coverage.

91. Defendant's stated basis for denial was unreasonable, without proper cause, unsupported by the Policy language, and contrary to the facts known or reasonably available to Defendant at the time of denial.

92. Defendant did not deny coverage because Plaintiffs failed to provide material information necessary to determine coverage. Instead, Defendant denied coverage on the stated ground that there was no Uninsured Motorist Bodily Injury Coverage, despite Policy language providing UM/UIM coverage to passengers occupying an insured auto during a prearranged service.

93. Defendant unreasonably denied coverage despite facts showing that Plaintiffs were passengers in an accepted Uber ride, that the Uber vehicle was rear-ended by an unidentified hit-and-run driver, that Plaintiffs sustained bodily injuries and damages, and that the Policy provided UM/UIM coverage to passengers occupying an insured auto during a prearranged service.

94. Defendant further acted unreasonably and without proper cause by refusing to recognize Plaintiffs as insureds under Part III of the Policy, refusing to provide UM/UIM benefits owed under the Policy, relying on an unreasonable interpretation of the Policy, ignoring or disregarding facts supporting coverage, and placing its own financial interests above Plaintiffs' interests.

95. Defendant's conduct was not a mere mistake, honest coverage dispute, or simple failure to exercise reasonable care. Rather, Defendant acted unreasonably and without proper cause in a manner that deprived Plaintiffs of the benefits of the Policy.

96. Defendant's unreasonable denial of coverage, failure to pay benefits, failure to conduct a fair investigation, use of overbroad and invasive document demands, failure to complete the

**COMPLAINT FOR DAMAGES**

12

requested examinations under oath, and use of improper delay tactics breached the implied covenant of good faith and fair dealing.

97. As a direct and proximate result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiffs were deprived of policy benefits, suffered economic loss, incurred expenses, suffered emotional distress, and sustained other damages in an amount to be proven at trial.

98. Plaintiffs are entitled to recover all damages proximately caused by Defendant's bad-faith conduct, including but not limited to unpaid policy benefits, consequential damages, emotional-distress damages, prejudgment interest, costs of suit, and any other relief the Court deems just and proper.

## THIRD CAUSE OF ACTION

## DECLARATORY RELIEF RE RIGHTS AND DUTIES UNDER INSURANCE POLICY

(by Plaintiffs against Defendant and DOES 1-50 inclusive)

99. Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 99 of this Complaint as though fully set forth herein.

100. An actual controversy has arisen and now exists between Plaintiffs and Defendant concerning the parties' respective rights and duties under the Policy.

101. Plaintiffs contend that they are insureds under Part III of the Policy because they were passengers occupying an insured Uber vehicle while that vehicle was engaged in a prearranged service.

102. Plaintiffs further contend that the Policy provides Uninsured/Underinsured Motorist Bodily Injury Coverage for Rideshare Period 3 in the amount of $1,000,000 per accident while passengers are on board an insured auto during a covered Uber ride.

103. Plaintiffs further contend that the August 31, 2023, collision involved an uninsured auto within the meaning of the Policy because the Uber vehicle occupied by Plaintiffs was struck from the rear by an unidentified hit-and-run driver who fled the scene and did not provide identifying information.

104. Plaintiffs further contend that they complied with all applicable conditions precedent and Policy requirements, including providing notice of the collision, cooperating with Defendant's

COMPLAINT FOR DAMAGES

13

investigation, providing reasonably available claim information and documentation, and reporting the hit-and-run collision to law enforcement within the time required by the Policy, or as soon as practicable.

105. To the extent Defendant contends that any condition precedent or Policy requirement was not satisfied, Plaintiffs contend that Defendant waived, excused, prevented, or is estopped from asserting nonperformance of any such condition by denying coverage, refusing to recognize Plaintiffs as insureds, refusing to provide benefits, and failing to proceed fairly with its own requested investigation and examinations under oath.

106. Defendant disputes Plaintiffs' rights under the Policy and, by letter dated February 12, 2026, denied coverage for Plaintiffs' claims on the stated ground that there was no Uninsured Motorist Bodily Injury Coverage.

107. Plaintiffs dispute Defendant's denial and contend that Defendant's position is contrary to the Policy language, contrary to the facts available to Defendant, and contrary to Plaintiffs' rights as insured passengers under Part III of the Policy.

108. Plaintiffs are informed and believe, and based thereon allege, that Defendant continues to deny or dispute coverage and refuses to recognize Plaintiffs' right to receive UM/UIM benefits under the Policy.

109. A judicial declaration is necessary and appropriate to determine the parties' rights and duties under the Policy, including but not limited to whether Plaintiffs are insureds under the Policy, whether the August 31, 2023 collision falls within the Policy's UM/UIM coverage, whether the unidentified hit-and-run vehicle qualifies as an uninsured auto, whether Defendant owes coverage obligations to Plaintiffs, and whether Defendant may deny coverage on the stated ground that there is no Uninsured Motorist Bodily Injury Coverage.

110. Plaintiffs seek a judicial declaration that Plaintiffs were insureds under Part III of the Policy at the time of the August 31, 2023, collision.

111. Plaintiffs seek a judicial declaration that the Uber vehicle occupied by Plaintiffs was an insured auto engaged in a prearranged service within the meaning of the Policy.

112. Plaintiffs seek a judicial declaration that the unidentified hit-and-run vehicle qualifies as an uninsured auto within the meaning of the Policy.

**COMPLAINT FOR DAMAGES**

14

113. Plaintiffs seek a judicial declaration that Plaintiffs' claims fall within the Uninsured/Underinsured Motorist Bodily Injury Coverage provided by the Policy, subject to proof of Plaintiffs' injuries, damages, and legal entitlement to recover from the unidentified hit-and-run driver.

114. Plaintiffs seek a judicial declaration that Defendant's stated basis for denying coverage that there was no Uninsured Motorist Bodily Injury Coverage, is incorrect, invalid, and contrary to the Policy.

115. Plaintiffs seek a judicial declaration that Defendant is obligated to recognize Plaintiffs as insureds, provide coverage, fairly adjust Plaintiffs' claims, and pay all UM/UIM benefits owed under the Policy, subject to the Policy limits and proof of damages.

116. A declaration of the parties' rights and duties will resolve the existing controversy and uncertainty regarding coverage, Plaintiffs' status as insureds, and Defendant's obligations under the Policy.

117. Plaintiffs therefore request a judicial declaration in their favor and against Defendant as set forth above, together with costs of suit and any other relief the Court deems just and proper.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendant and DOES 1 to 50, inclusive, as follows:

1. For all unpaid insurance benefits owed under the Policy, including Uninsured/Underinsured Motorist Bodily Injury Coverage benefits, subject to the applicable Policy limits and according to proof;

2. For general damages, including emotional-distress damages, in an amount according to proof at trial;

3. For special damages, including economic losses, expenses, and other out-of-pocket losses, in an amount according to proof at trial;

4. For consequential damages proximately caused by Defendant's conduct, in an amount according to proof at trial;

5. For reasonable costs of this suit and attorneys' fees;

### COMPLAINT FOR DAMAGES

15

6. For a judicial declaration regarding the parties' rights and duties under the Policy, including that Plaintiffs were insureds under Part III of the Policy, that Plaintiffs' claims fall within the Policy's Uninsured/Underinsured Motorist Bodily Injury Coverage, and that Defendant is obligated to recognize coverage and provide all benefits owed under the Policy, subject to the Policy limits and proof of damages;

7. For prejudgment and post-judgment interest according to law;

8. For such other and further relief as the Court deems just and proper.

///

Dated: 05/08/2026                                    A&M LAW, APC


                                                     *Smbat Mamyan*
                                                     _____
                                                     Smbat Mamyan, Esq.
                                                     Attorney for Plaintiffs,
                                                     KAREN KARAKHANIAN;
                                                     HERMINE ARAKELYAN

**COMPLAINT FOR DAMAGES**

16

**NOTICE OF REMOVAL**                                          **EXHIBIT B**
                                                                **Page 42**

CM-010

<table>
<tr><td colspan="2">

**ATTORNEY OR PARTY WITHOUT ATTORNEY**
NAME. Smbat Mamyan, Esq.
FIRM NAME. A&M LAW, APC.
STREET ADDRESS: 16530 Ventura Blvd.
CITY. Encino    STATE. CA    ZIP CODE. 91436
TELEPHONE NO.. (818) 855-1858    FAX NO.· (855) 630-9997
EMAIL ADDRESS: SamM@AMLawFirm.net; AlibiA@AMLawFirm.net
ATTORNEY FOR (name): Plaintiffs Karen Karakhanian, Hermine Arakelyan

STATE BAR NUMBER: 323417

</td><td>

**FOR COURT USE ONLY**

**Electronically FILED by
Superior Court of California,
County of Los Angeles
5/08/2026 2:53 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By D. Williams, Deputy Clerk**

</td></tr>
</table>

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
 STREET ADDRESS. 111 North Hill Street
MAILING ADDRESS· 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, CA 90012
 BRANCH NAME: Stanley Mosk Courthouse

CASE NAME:
 Karen Karakhanian, et. al. v. Blue Hill Specialty Insurance Company, Inc., et. al.

| **CIVIL CASE COVER SHEET**<br>[x] Unlimited    [ ] Limited<br>(Amount demanded exceeds $35,000)    (Amount demanded is $35,000 or less) | **Complex Case Designation**<br>[ ] Counter    [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | CASE NUMBER:<br>**26STCV14805**<br>JUDGE:<br>DEPT.: |
|---|---|---|

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Asbestos**
[ ] Asbestos (04)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/Unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[x] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Employment Development Department (EDD)**
[ ] EDD decision review (48)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.404)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Comprehensive groundwater adjudication (47)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

Judicial Council of California, courts.ca.gov
Rev. January 1, 2026, Mandatory Form
Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740
Cal. Stds. Jud. Admin., std. 3.10

**Civil Case Cover Sheet**

CM-010, Page 1 of 3
→

**NOTICE OF REMOVAL**

**EXHIBIT B
Page 43**



CM-010

2. Is this case complex under rule 3.400 of the California Rules of Court?        ☐ Yes    ☒ No

If the case is complex, mark the factors requiring exceptional judicial management:

a. ☐ Large number of separately represented parties

b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve

c. ☐ Substantial amount of documentary evidence

d. ☐ Large number of witnesses

e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court

f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply):

a. ☒ monetary

b. ☒ nonmonetary; declaratory or injunctive relief

c. ☐ punitive

4. Number of causes of action (specify): THREE

5. Is this case a class action suit?        ☐ Yes    ☒ No

6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: May 8, 2026

Smbat Mamyan, Esq.
_____
(TYPE OR PRINT NAME)

▶ *Smbat Mamyan*
_____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

---

**NOTICE**

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.

- File this cover sheet in addition to any cover sheet required by local court rule.

- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.

- Unless this is a collections case under rule 3.740 of the California Rules of Court or a complex case, this cover sheet will be used for statistical purposes only.

---

### INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on pages 1 and 2. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 of the California Rules of Court is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $35,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**SEE PAGE 3 FOR INFORMATION PURPOSES ONLY.**

---

Rev. January 1, 2026                    **Civil Case Cover Sheet**                    CM-010, Page 2 of 3



---

**NOTICE OF REMOVAL**                                                            **EXHIBIT B**
                                                                                 **Page 44**

CM-010

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/
Wrongful Death
Uninsured Motorist (46) *(if the case involves
an uninsured motorist claim subject to
arbitration, check this item instead of Auto)*
**Asbestos**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/Wrongful Death
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death) Tort**
Product Liability *(not asbestos or toxic/
environmental)* (24)
Medical Malpractice (45)
Medical Malpractice–Physicians &
Surgeons
Other Professional Health Care
Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD (e.g.,
assault, vandalism)
Intentional Infliction of Emotional Distress
Negligent Infliction of Emotional Distress
Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest)
*(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice *(not
medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease Contract *(not
unlawful detainer or wrongful eviction)*
Contract/Warranty Breach–Seller Plaintiff
*(not fraud or negligence)*
Negligent Breach of Contract/Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book
accounts) (09)
Collections Case–Seller Plaintiff
Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally
complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute
**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent
domain, landlord-tenant, or
foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs,
check this item; otherwise, report as
Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition re Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court Case
Matter
Writ–Other Limited Court Case Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor Commissioner
Appeals
**Employment Development Department (EDD)**
EDD Decision Review (48) *(if the case
involves an Employment Development
Department decision, check this item
instead of Wrongful Termination or Other
Employment)*

**Provisionally Complex Civil Litigation (Cal.
Rules of Court, rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Comprehensive Groundwater Adjudication
(47)
Insurance Coverage Claims *(arising from
provisionally complex case type listed
above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment *(non-domestic
relations)*
Sister-State Judgment
Administrative Agency Award *(not unpaid
taxes)*
Petition/Certification of Entry of Judgment
on Unpaid Taxes
Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
Declaratory Relief Only Injunctive Relief
Only *(non-harassment)*
Mechanic's Lien
Other Commercial Complaint Case *(non-
tort/non-complex)*
Other Civil Complaint *(non-tort/non-
complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult Abuse ·
Election Contest
Petition for Name Change
Petition for Relief From Late Claim
Other Civil Petition

**NOTICE OF REMOVAL**

**EXHIBIT B**

**Page 45**

| SHORT TITLE | CASE NUMBER |
|---|---|
| Karen Karakhanian, et. al. v. Blue Hill Specialty Insurance Company, Inc., et. al. | 26STCV14805 |

# CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Courthouse Location (Column C) | |
|---|---|
| 1. Class Actions must be filed in the Stanley Mosk Courthouse, Central District. | 7. Location where petitioner resides. |
| 2. Permissive filing in Central District. | 8. Location wherein defendant/respondent functions wholly. |
| 3. Location where cause of action arose. | 9. Location where one or more of the parties reside. |
| 4. Location where bodily injury, death or damage occurred. | 10. Location of Labor Commissioner Office. |
| 5. Location where performance required, or defendant resides. | 11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection). |
| 6. Location of property or permanently garaged vehicle. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ 2201 Motor Vehicle – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | Uninsured Motorist (46) | ☐ 4601 Uninsured Motorist – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| **Other Personal Injury/ Property Damage/ Wrongful Death** | Other Personal Injury/ Property Damage/ Wrongful Death (23) | ☐ 2301 Premise Liability (e.g., dangerous conditions of property, slip/trip and fall, dog attack, etc.) | 1, 4 |
| | | ☐ 2302 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, battery, vandalism, etc.) | 1, 4 |
| | | ☐ 2303 Intentional Infliction of Emotional Distress | 1, 4 |
| | | ☐ 2304 Other Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | | ☐ 2305 Elder/Dependent Adult Abuse/Claims Against Skilled Nursing Facility | 1, 4 |
| | | ☐ 2306 Intentional Conduct – Sexual Abuse Case (in any form) | 1, 4 |

LASC CIV 109 Rev. 01/23   **CIVIL CASE COVER SHEET ADDENDUM**   LASC Local Rule 2.3
For Mandatory Use   **AND STATEMENT OF LOCATION**

**NOTICE OF REMOVAL**                                          **EXHIBIT B**
                                                                      **Page 46**

| SHORT TITLE | CASE NUMBER |
|---|---|
| Karen Karakhanian, et. al. v. Blue Hill Specialty Insurance Company, Inc., et. al. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Other Personal Injury/ Property Damage/ Wrongful Death** | | ☐ 2307 Construction Accidents | 1, 4 |
| | | ☐ 2308 Landlord – Tenant Habitability (e.g., bed bugs, mold, etc.) | 1, 4 |
| | Product Liability (24) | ☐ 2401 Product Liability (not asbestos or toxic/ environmental) | 1, 4 |
| | | ☐ 2402 Product Liability – Song-Beverly Consumer Warranty Act (CA Civil Code §§1790-1795.8) (Lemon Law) | 1, 3, 5 |
| | Medical Malpractice (45) | ☐ 4501 Medical Malpractice – Physicians & Surgeons | 1, 4 |
| | | ☐ 4502 Other Professional Health Care Malpractice | 1, 4 |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ 0701 Other Commercial/Business Tort (not fraud or breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ 0801 Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ 1301 Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ 1601 Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ 2501 Legal Malpractice | 1, 2, 3 |
| | | ☐ 2502 Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ 3501 Other Non-Personal Injury/Property Damage Tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ 3601 Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ 1501 Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ 1502 Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract / Warranty (06) (not insurance) | ☐ 0601 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ 0602 Contract/Warranty Breach – Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ 0603 Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ 0604 Other Breach of Contract/Warranty (no fraud/ negligence) | 1, 2, 5 |
| | | ☐ 0605 Breach of Rental/Lease Contract (COVID-19 Rental Debt) | 2, 5 |
| | Collections (09) | ☐ 0901 Collections Case – Seller Plaintiff | 5, 6, 11 |
| | | ☐ 0902 Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ 0903 Collections Case – Purchased Debt (charged off consumer debt purchased on or after January 1, 2014) | 5, 6, 11 |
| | | ☐ 0904 Collections Case – COVID-19 Rental Debt | 5, 11 |
| | Insurance Coverage (18) | ☑ 1801 Insurance Coverage (not complex) | 1, 2, 5, 8 |

**NOTICE OF REMOVAL**

**EXHIBIT B**
**Page 47**

| SHORT TITLE | CASE NUMBER |
|---|---|
| Karen Karakhanian, et. al. v. Blue Hill Specialty Insurance Company, Inc., et. al. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Contract** (Continued) | Other Contract (37) | ☐ 3701 Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ 3702 Tortious Interference | 1, 2, 3, 5 |
| | | ☐ 3703 Other Contract Dispute (not breach/insurance/fraud/ negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/ Inverse Condemnation (14) | ☐ 1401 Eminent Domain/Condemnation<br>                    Number of Parcels _____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ 3301 Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ 2601 Mortgage Foreclosure | 2, 6 |
| | | ☐ 2602 Quiet Title | 2, 6 |
| | | ☐ 2603 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer – Commercial (31) | ☐ 3101 Unlawful Detainer – Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Residential (32) | ☐ 3201 Unlawful Detainer – Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Post Foreclosure (34) | ☐ 3401 Unlawful Detainer – Post Foreclosure | 2, 6, 11 |
| | Unlawful Detainer – Drugs (38) | ☐ 3801 Unlawful Detainer – Drugs | 2, 6, 11 |
| **Judicial Review** | Asset Forfeiture (05) | ☐ 0501 Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ 1101 Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ 0201 Writ – Administrative Mandamus | 2, 8 |
| | | ☐ 0202 Writ – Mandamus on Limited Court Case Matter | 2 |
| | | ☐ 0203 Writ – Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ 3901 Other Writ/Judicial Review | 2, 8 |
| | | ☐ 3902 Administrative Hearing | 2, 8 |
| | | ☐ 3903 Parking Appeal | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ 0301 Antitrust/Trade Regulation | 1, 2, 8 |
| | Asbestos (04) | ☐ 0401 Asbestos Property Damage | 1, 11 |
| | | ☐ 0402 Asbestos Personal Injury/Wrongful Death | 1, 11 |

LASC CIV 109 Rev. 01/23                **CIVIL CASE COVER SHEET ADDENDUM**                LASC Local Rule 2.3

For Mandatory Use                **AND STATEMENT OF LOCATION**

**NOTICE OF REMOVAL**                                        **EXHIBIT B**
                                                            **Page 48**

| SHORT TITLE | CASE NUMBER |
|---|---|
| Karen Karakhanian, et. al. v. Blue Hill Specialty Insurance Company, Inc., et. al. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Provisionally Complex Litigation** (Continued) | Construction Defect (10) | ☐ 1001 Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ 4001 Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ 2801 Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ 3001 Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ 4101 Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ 2001 Sister State Judgment | 2, 5, 11 |
| | | ☐ 2002 Abstract of Judgment | 2, 6 |
| | | ☐ 2004 Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ 2005 Petition/Certificate for Entry of Judgment Unpaid Tax | 2, 8 |
| | | ☐ 2006 Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ 2701 Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (not specified above) (42) | ☐ 4201 Declaratory Relief Only | 1, 2, 8 |
| | | ☐ 4202 Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ 4203 Other Commercial Complaint Case (non-tort/noncomplex) | 1, 2, 8 |
| | | ☐ 4204 Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ 2101 Partnership and Corporation Governance Case | 2, 8 |
| | Other Petitions (not specified above) (43) | ☐ 4301 Civil Harassment with Damages | 2, 3, 9 |
| | | ☐ 4302 Workplace Harassment with Damages | 2, 3, 9 |
| | | ☐ 4303 Elder/Dependent Adult Abuse Case with Damages | 2, 3, 9 |
| | | ☐ 4304 Election Contest | 2 |
| | | ☐ 4305 Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ 4306 Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ 4307 Other Civil Petition | 2, 9 |

LASC CIV 109 Rev. 01/23

For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION**

LASC Local Rule 2.3

**NOTICE OF REMOVAL**

**EXHIBIT B**

**Page 49**

| SHORT TITLE | CASE NUMBER |
|---|---|
| Karen Karakhanian, et. al. v. Blue Hill Specialty Insurance Company, Inc., et. al. | |

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address, which is the basis for the filing location including zip code. (No address required for class action cases.)

| REASON:<br>☐ 1. ☑ 2. ☐ 3. ☐ 4. ☑ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11 | | | ADDRESS:<br>1234 S Montebello Blvd |
|---|---|---|---|
| CITY:<br>Montebello | STATE:<br>CA | ZIP CODE:<br>90640 | |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the __Central__ District of the Superior Court of California, County of Los Angeles [Code of Civ. Proc., 392 et seq., and LASC Local Rule 2.3(a)(1)(E)]

Dated: 05/08/2026

_Smbat Mamyan_
(SIGNATURE OF ATTORNEY/FILING PARTY

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.
2. If filing a Complaint, a completed Summons form for issuance by the Clerk.
3. Civil Case Cover Sheet Judicial Council form CM-010.
4. Civil Case Cover Sheet Addendum and Statement of Location form LASC CIV 109 (01/23).
5. Payment in full of the filing fee, unless there is a court order for waiver, partial or schedule payments.
6. A signed order appointing a Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court to issue a Summons.
7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the Summons and Complaint, or other initiating pleading in the case.

LASC CIV 109 Rev. 01/23
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

LASC Local Rule 2.3

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>**05/08/2026**<br>David W. Slayton, Executive Officer / Clerk of Court<br>By: _____ D. Williams _____ Deputy |
| **NOTICE OF CASE ASSIGNMENT**<br><br>**UNLIMITED CIVIL CASE** | |
| **Your case is assigned for all purposes to the judicial officer indicated below.** | CASE NUMBER:<br>26STCV14805 |

## THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|
| ✓ | Alison Mackenzie | 515 | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record    David W. Slayton, Executive Officer / Clerk of Court

on 05/08/2026 _____        By D. Williams _____, Deputy Clerk
    (Date)

LACIV 190 (Rev 6/18)         **NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**
LASC Approved 05/06

**NOTICE OF REMOVAL**                                          **EXHIBIT B**
                                                               **Page 51**

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION

The Division 7 Rules were effective January 1, 2007. They apply to all general civil cases.

### PRIORITY OVER OTHER RULES

The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE

A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS

Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS

All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS

Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE

A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE

The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date. All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference. These matters may be heard and resolved at this conference. At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS

The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions

Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases

Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status. If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

**NOTICE OF REMOVAL**

**EXHIBIT B**
**Page 52**

## Superior Court of California, County of Los Angeles
## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS MUST SERVE THIS ADR INFORMATION PACKAGE ON ANY NEW PARTIES NAMED TO THE ACTION WITH THE CROSS-COMPLAINT.**

### WHAT IS ADR?
Alternative Dispute Resolution (ADR) helps people find solutions to their legal disputes without going to trial. The Court offers a variety of ADR resources and programs for various case types.

### TYPES OF ADR

- **Negotiation.** Parties may talk with each other about resolving their case at any time. If the parties have attorneys, they will negotiate for their clients.

- **Mediation.** Mediation may be appropriate for parties who want to work out a solution but need help from a neutral third party. A mediator can help the parties reach a mutually acceptable resolution. Mediation may be appropriate when the parties have communication problems and/or strong emotions that interfere with resolution. Mediation may not be appropriate when the parties want a public trial, lack equal bargaining power, or have a history of physical or emotional abuse.

- **Arbitration.** Less formal than a trial, parties present evidence and arguments to an arbitrator who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision.

- **Settlement Conferences.** A judge or qualified settlement officer assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Mandatory settlement conferences may be ordered by a judicial officer. In some cases, voluntary settlement conferences may be requested by the parties.

### ADVANTAGES OF ADR

- **Save time and money.** Utilizing ADR methods is often faster than going to trial and parties can save on court costs, attorney's fees, and other charges.
- **Reduce stress and protect privacy.** ADR is conducted outside of a courtroom setting and does not involve a public trial.
- **Help parties maintain control.** For many types of ADR, parties may choose their ADR process and provider.

### DISADVANTAGES OF ADR
- **Costs.** If the parties do not resolve their dispute, they may have to pay for ADR, litigation, and trial.
- **No Public Trial.** ADR does not provide a public trial or decision by a judge or jury.

### WEBSITE RESOURCES FOR ADR
- **Los Angeles Superior Court ADR website:** www.lacourt.org/ADR
- **California Courts ADR website:** www.courts.ca.gov/programs-adr.htm

LASC CIV 271 Rev. 12/25
For Mandatory Use

Page 1 of 3

**NOTICE OF REMOVAL**

**EXHIBIT B**

**Page 53**

**Los Angeles Superior Court ADR Programs for Unlimited Civil (cases valued over $35,000)**
Litigants should closely review the requirements for each program and the types of cases served.

- **Civil Mediation Vendor Resource List.** Litigants in unlimited civil cases may use the Civil Mediation Vendor Resource List to arrange voluntary mediations without Court referral or involvement. The Resource List includes organizations that have been selected through a formal process that have agreed to provide a limited number of low-cost or no-cost mediation sessions with attorney mediators or retired judges. Organizations may accept or decline cases at their discretion. Mediations are scheduled directly with these organizations and are most often conducted through videoconferencing. The organizations on the Resource List target active civil cases valued between $50,000-$250,000, though cases outside this range may be considered. *For more information and to view the list of vendors and their contact information, download the Resource List Flyer and FAQ Sheet at www.lacourt.org/ADR/programs.html.*
  **RESOURCE LIST DISCLAIMER:** The Court provides this list as a public service. The Court does not endorse, recommend, or make any warranty as to the qualifications or competency of any provider on this list. Inclusion on this list is based on the representations of the provider. The Court assumes no responsibility or liability of any kind for any act or omission of any provider on this list.

- **Mediation Volunteer Panel (MVP).** Unlimited civil cases referred by judicial officers to the Court's Mediation Volunteer Panel (MVP) are eligible for three hours of virtual mediation at no cost with a qualified mediator from the MVP. Through this program, mediators volunteer preparation time and three hours of mediation at no charge. If the parties agree to continue the mediation after three hours, the mediator may charge their market hourly rate. When a case is referred to the MVP, the Court's ADR Office will provide information and instructions to the parties. The Notice directs parties to meet and confer to select a mediator from the MVP or they may request that the ADR Office assign them a mediator. The assigned MVP mediator will coordinate the mediation with the parties. *For more information or to view MVP mediator profiles, visit the Court's ADR webpage at www.lacourt.org/ADR or email ADRCivil@lacourt.org.*

- **Mediation Center of Los Angeles (MCLA) Referral Program.** The Court may refer unlimited civil cases to mediation through a formal contract with the Mediation Center of Los Angeles (MCLA), a nonprofit organization that manages a panel of highly qualified mediators. Cases must be referred by a judicial officer or the Court's ADR Office. The Court's ADR Office will provide the parties with information for submitting the case intake form for this program. MCLA will assign a mediator based on the type of case presented and the availability of the mediator to complete the mediation in an appropriate time frame. MCLA has a designated fee schedule for this program. *For more information, contact the Court's ADR Office at ADRCivil@lacourt.org.*

- **Resolve Law LA (RLLA) Virtual Mandatory Settlement Conferences (MSC).** Resolve Law LA provides three-hour virtual Mandatory Settlement Conferences at no cost for personal injury and non-complex employment cases. Cases must be ordered into the program by a judge pursuant to applicable Standing Orders issued by the Court and must complete the program's online registration process. The program leverages the talent of attorney mediators with at least 10 years of litigation experience who volunteer as settlement officers. Each MSC includes two settlement officers, one each from the plaintiff and defense bars. Resolve Law LA is a joint effort of the Court, Consumer Attorneys Association of Los Angeles County (CAALA), Association of Southern California Defense Counsel (ASCDC), Los Angeles Chapter of the American Board of Trial Advocates (LA-ABOTA), Beverly Hills Bar Foundation (BHBF), California Employment Lawyers Association (CELA), and Los Angeles County Bar Association (LACBA). *For more information, visit https://resolvelawla.com.*

LASC CIV 271 Rev. 12/25
For Mandatory Use

NOTICE OF REMOVAL

**EXHIBIT B
Page 54**

- **Judicial Mandatory Settlement Conferences (MSCs).** Judicial MSCs are ordered by the Court for unlimited civil cases and may be held close to the trial date or on the day of trial. The parties and their attorneys meet with a judicial officer who does not make a decision, but who instead assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For more information, visit https://www.lacourt.org/division/civil/CI0047.aspx.

**Los Angeles Superior Court ADR Programs for Limited Civil (cases valued below $35,000)**
Litigants should closely review the requirements for each program and the types of cases served.

- **Dispute Resolution Program Act (DRPA) Day-of-Hearing Mediation.** Through the Dispute Resolution Program Act (DRPA), the Court works with county-funded agencies, including the Los Angeles County Department of Consumer & Business Affairs (DCBA) and the Center for Conflict Resolution (CCR), to provide voluntary day-of-hearing mediation services for small claims, unlawful detainer, limited civil, and civil harassment matters. DCBA and CCR staff and trained volunteers serve as mediators, primarily for self-represented litigants. There is no charge to litigants. *For more information, visit https://dcba.lacounty.gov/countywidedrp.*

- **Temporary Judge Unlawful Detainer Mandatory Settlement Conference Pilot Program.** Temporary judges who have been trained as settlement officers are deployed by the Court to designated unlawful detainer court locations one day each week to facilitate settlement of unlawful detainer cases on the day of trial. For this program, cases may be ordered to participate in a Mandatory Settlement Conference (MSC) by judicial officers at Stanley Mosk, Long Beach, Compton, or Santa Monica. Settlement rooms and forms are available for use on the designated day at each courthouse location. There is no charge to litigants for the MSC. *For more information, contact the Court's ADR Office at ADRCivil@lacourt.org.*

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:
Stanley Mosk Courthouse
111 North Hill Street, Los Angeles, CA 90012

PLAINTIFF:
Karen Karakhanian , et al.

DEFENDANT:
Blue Hill Specialty Insurance Company, Inc., an Illinois Corporation

**NOTICE OF CASE MANAGEMENT CONFERENCE**

Reserved for Clerk's File Stamp

**FILED**
Superior Court of California
County of Los Angeles

05/11/2026

David W. Slayton, Executive Officer / Clerk of Court

By: _____ N. Quintanilla _____ Deputy

CASE NUMBER:
26STCV14805

TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve this notice of hearing on all parties/attorneys of record forthwith, and meet and confer with all parties/attorneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

Your Case Management Conference has been scheduled at the courthouse address shown above on:

Date: 09/16/2026     Time: 8:30 AM     Dept.: 515

NOTICE TO DEFENDANT:    THE SETTING OF THE CASE MANAGEMENT CONFERENCE DOES NOT EXEMPT THE DEFENDANT FROM FILING A RESPONSIVE PLEADING AS REQUIRED BY LAW.

Pursuant to California Rules of Court, rules 3.720-3.730, a completed Case Management Statement (Judicial Council form # CM-110) must be filed at least 15 calendar days prior to the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record. You must be familiar with the case and be fully prepared to participate effectively in the Case Management Conference.

At the Case Management Conference, the Court may make pretrial orders including the following, but not limited to, an order establishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the case; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay Reduction Act (Gov. Code, § 68600 et seq.)

Notice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case Management Conference, the Court may impose sanctions, pursuant to LASC Local Rule 3.37, Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.360 and 583.410, Government Code section 68608, subdivision (b), and California Rules of Court, rule 2.2 et seq.

Dated: 05/11/2026

_____ Judicial Officer

**CERTIFICATE OF SERVICE** Alison Mackenzie / Judge

I, the below named Executive Officer/Clerk of Court of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named below:

☐ by depositing in the United States mail at the courthouse in Los Angeles _____, California, one copy of the original filed herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid.

☐ by personally giving the party notice upon filing of the complaint.

David W. Slayton, Executive Officer / Clerk of Court

Dated: 05/11/2026

By _____
Deputy Clerk

**NOTICE OF REMOVAL**

**NOTICE OF
CASE MANAGEMENT CONFERENCE**

LASC LACIV 132 Rev. 01/23
For Optional Use

Cal. Rules of Court, rules 3.720-3.730
LASC Local Rules, Chapter 7KUHH

**EXHIBIT C**
**Page 56**

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

Stanley Mosk Courthouse
111 North Hill Street,  Los Angeles, CA 90012

PLAINTIFF(S)/PETITIONER(S):

Karen Karakhanian , et al.

DEFENDANT(S)/RESPONDENT(S):

Blue Hill Specialty Insurance Company, Inc., an Illinois Corporation

| | FOR COURT USE ONLY |
| --- | --- |

**FILED**
Superior Court of California
County of Los Angeles
05/11/2026
David W. Slayton, Executive Officer / Clerk of Court
By: _____ N. Quintanilla _____ Deputy

## CLERK'S CERTIFICATE OF SERVICE
## BY ELECTRONIC SERVICE

CASE NUMBER:

26STCV14805

I, David W. Slayton, Executive Officer/Clerk of Court of the above-entitled court, do hereby certify that I am not a party to the cause herein and that on this date I served the

**Notice of Case Management Conference of 05/11/2026**

upon each party or counsel of record in the above entitled action by electronically serving to the party or parties at the electronic address as listed below:

**"Mamyan, Smbat" <samm@amlawfirm.net>**

The electronic transmission originated from the Superior Court of California, County of Los Angeles email address eService-DoNotReply@lacourt.org at the Stanley Mosk Courthouse, 111 North Hill Street, Los Angeles, CA 90012.

Dated: 05/11/2026

David W. Slayton, Executive Officer / Clerk of Court

By:  N. Quintanilla _____

Deputy Clerk

NOTICE OF REMOVAL
CLERK'S CERTIFICATE OF SERVICE BY ELECTRONIC SERVICE
Page 1 of 1 EXHIBIT C
Page 57

LASC CIV 310 NEW 03/25
For Mandatory Use

Code of Civil Procedure § 1013b(4)

**POS-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| A&M LAW. APC.                    SBN:323417<br>Smbat Mamyan, Esq.<br>16530 Ventura Blvd. Ste:627<br>Encino, CA 91436<br><br>TELEPHONE NO.: (818)855-1858          FAX NO. *(Optional):*<br>E-MAIL ADDRESS *(Optional):* SamM@amlawfirm.net<br>ATTORNEY FOR *(Name):* Karen Karakhanian, an individual; Et. Al. | *Electronically FILED by<br>Superior Court of California,<br>County of Los Angeles<br>5/26/2026 10:10 AM<br>David W. Slayton,<br>Executive Officer/Clerk of Court,<br>By M. Gonzalez, Deputy Clerk* |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  LOS ANGELES
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: SAME
CITY AND ZIP CODE: Los Angeles, 90012
BRANCH NAME: Stanley Mosk Courthouse

| PLAINTIFF/PETITIONER: Karen Karakhanian, an individual; Et. Al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Blue Hill Specialty Insurance Company, Inc. an Illinois Corporation | 26STCV14805 |

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.: |
|---|---|

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:

   a. ☒ summons

   b. ☒ complaint

   c. ☒ Alternative Dispute Resolution (ADR) package

   d. ☒ Civil Case Cover Sheet *(served in complex cases only)*

   e. ☐ cross-complaint

   f. ☒ other *(specify documents):* Notice of Case Assignment

3. a. Party served *(specify name of party as shown on documents served):*
   Blue Hill specialty Insurance Company, Inc. an Illinois Corporation

   b. ☒ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
   Employee Jaqueline Mejia at CT Corporation Registered Agent for Blue Hill Specialty Insurance Company

4. Address where the party was served:
   330 North Brand Blvd.Ste:700, Glendale CA 91203

5. I served the party *(check proper box)*

   a. ☒ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party  (1) on *(date):* May 21, 2026          (2) at *(time):* 12:10pm

   b. ☐ **by substituted service.** On *(date):*                 at *(time):*          I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):*          from *(city):*          **or** ☐ a declaration of mailing is attached.

      (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Form Adopted for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Page 1 of 2
Code of Civil Procedure, § 417.10

**EXHIBIT C**
**Page 58**

POS-010

| PLAINTIFF/PETITIONER: Karen Karakhanian, an individual; Et. Al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Blue Hill Specialty Insurance Company, Inc. an Illinois Corporation | 26STCV14805 |

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*         (2) from *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt*.)* (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

  a. ☐ as an individual defendant.

  b. ☐ as the person sued under the fictitious name of *(specify):*

  c. ☐ as occupant.

  d. ☒ On behalf of *(specify):* Blue Hill Specialty Insurance Company, Inc.

    under the following Code of Civil Procedure section:

| | |
|---|---|
| ☒ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☒ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☒ other: Registered Agent CT Corp. |

7. **Person who served papers**

  a. Name: JEROME MORRIS

  b. Address: 5349 Newcastle Avenue #3, Encino CA 91316

  c. Telephone number: (818)730-5330

  d. **The fee** for service was: $

  e. I am:

    (1) ☐ not a registered California process server.

    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).

    (3) ☒ a registered California process server:

      (i) ☐ owner ☐ employee ☒ independent contractor.

      (ii) Registration No.: 2021178091

      (iii) County: Los Angeles

8. ☒ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    **or**

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: May 23, 2026

JEROME MORRIS
_____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶ *Jerome Morris* _____
                      (SIGNATURE)

~~NOTICE OF REMOVAL~~

POS-010 [Rev. January 1, 2007]      **PROOF OF SERVICE OF SUMMONS**      ~~EXHIBIT~~ C
                                             Page 2 of 2

**Page 59**

For your protection and privacy, please press the Clear This Form button after you have printed the form.

[ Print this form ]    [ Save this form ]    [ Clear this form ]

## CERTIFICATE OF SERVICE

I hereby certify that on the date below, I caused a true and correct copy of the foregoing document to be served by the Court's electronic CM/ECF system, and via electronic mail, on the following individuals on June 22, 2026:

| | |
|---|---|
| Smbat Mamyan<br>Serob Alajanyan<br>Alibi Akylas<br>**A&M Law, APC**<br>16530 Ventura Blvd., Ste. 627<br>Encino, CA 91436<br>Email: SamM@AMLawfirm.net<br>Email: amlawfirm@AMLawfirm.net<br>Email: AlibiA@AMLawfirm.net | Attorney for Plaintiffs<br>Karen Karakhanian and Hermine Arakelyan |

☒      **BY E-MAIL**: I transmitted a copy of the foregoing document(s) via e-mail to the addressee(s).

☐      **BY OVERNIGHT DELIVERY:** I caused the above-referenced document(s) to be delivered as indicated on the SERVICE LIST.

☐      **BY PERSONAL SERVICE:** I personally ordered the delivery of such document by hand to the offices of the addressee(s) via First Legal Messenger Service.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on June 22, 2026, at Sherman Oaks, California.


_/s/ *Patice A. Gore*_
Patice Alana Gore


SINCLAIR
BRAUN
KARGHER LLP

7

**NOTICE OF REMOVAL**